**OKLAHOMA MORRIS PLAN COMPANY, a Corporation**
**and**
**Liberty Loan Corporation, a Corporation, Plaintiffs,**

v.

**SECURITY MUTUAL CASUALTY COMPANY, a Corporation, Defendant.**

No. 69 C 18(2).

United States District Court,
E. D. Missouri, E. D.

Dec. 28, 1970.

R. H. McRoberts, Bryan, Cave, Mc-Pheeters & McRoberts, St. Louis, Mo., for plaintiffs.

Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This case was tried to the Court without a jury. It is a suit on a bankers blanket bond issued by Security Mutual Casualty Company to General Contract Finance Corporation and Oklahoma Morris Plan Company to cover any losses of General Contract Finance Corporation or Oklahoma Morris Plan Company through fraud or dishonesty of its employees.

Liberty Loan Corporation is a Delaware corporation, with its principal place of business in Clayton, Missouri. Oklahoma Morris Plan Company is an Oklahoma corporation that was owned by Liberty at the time of trial. The defendant, Security Mutual Casualty Company, is a citizen of Illinois, with its principal place of business in Chicago. This Court has jursdiction under 28 U.S.C. § 1332.

Security Mutual Casualty Company issued its Bankers Blanket Bond No. 11315, effective as of April 1, 1966, in which the assured was designated as:

"GENERAL CONTRACT FINANCE CORPORATION, ETAL, ST. LOUIS, MISSOURI (PER JOINT ASSURED RIDER ATTACHED) and all nominees organized by it for the purpose of handling any of its business transactions (hereinafter collectively called the Assured),. * * *"

Oklahoma Morris Plan Company, a corporation, was included as one of the named insured on April 1, 1966, and at all times thereafter relevant to this loss.

On August 7, 1967, General Contract Finance Corporation executed an Instrument of Exchange (wherein it was referred to as "General") with Liberty Loan Corporation, providing, in part:

"1. General hereby transfers, assigns, and conveys to Liberty all of General's assets, real, personal or mixed, and wheresoever located, meaning by the term 'assets' all of General's properties, funds, permits, licenses, rights, interests and claims of any description whatever, tangible or intangible, absolute or contingent, known or unknown, whether created by agreement or operation of law, and whether or not included or by generally accepted accounting principles includable in balance sheets, it being particularly understood, but not by way of limitation of this definition, that the term shall embrace any rights or claims against the United States or state, county, municipal or other governments for refunds of taxes paid and to adjustments of taxable income for any year because of losses or other events occurring in another year; except, however, that the following assets are not hereby transferred, assigned and conveyed to Liberty:

" * * *

"2. Simultaneously with the execution hereof, General has delivered to Liberty the following, the receipt of

which is hereby acknowledged by Liberty:

"(A) Stock certificates, duly endorsed by General to Liberty or to Liberty's nominees as aforesaid, for shares of outstanding capital stock of all those subsidiaries of General which are listed in Schedule A attached to the aforesaid Plan of Reorganization, the shares evidenced by said certificates being represented by General as constituting all of the outstanding capital stock of said subsidiaries;"

Among the assets delivered to Liberty Loan Corporation were stock certificates, endorsed by General Contract Finance Corporation to Liberty Loan Corporation, or its nominee, covering all of the shares of the outstanding capital stock of Oklahoma Morris Plan Company, which are still owned by Liberty.

On January 10, 1968, Oklahoma Morris Plan Company discovered that Orval Jack Williams, an employee, had been embezzling company funds over a number of years by setting up fictitious loans to fictitious persons; signing the names of such fictitious persons to applications, notes, and payment cards; by causing checks to be drawn payable to such fictitious persons; and by endorsing the names of such fictitious persons on such checks, and appropriating the proceeds to his own use. Notice of the loss was reported to the defendant by letter, dated January 19, 1968.

On January 23, 1968, a copy of the sworn question and answer statement made by Orval Jack Williams, detailing his fraudulent transactions, together with a list of ninety-five outstanding fictitious loans, and Williams' affidavit, was sent to defendant's underwriting managers, Scarborough and Company.

On January 30, 1968, defendant gave notice of cancellation of its Bankers Blanket Bond No. 11315 to be effective on March 3, 1968.

Thereafter, on February 7, 1968, detailed information disclosing all the details of the loss was sent to the defendant's underwriting managers.

Formal sworn proof of loss was filed with Security on May 3, 1968.

Thereafter, defendant returned to plaintiffs the unearned premium on the bond for the period commencing as of March 2, 1968, to the expiration date, but retained the full pro rata premium on the bond for the period up to and including March 2, 1968.

On March 25, 1968, counsel for defendant came to St. Louis, reviewed the details of the loss with plaintiffs' auditor, and stated that he was satisfied as to the loss claimed and the compilation of evidence submitted to him.

This suit was filed on January 17, 1969. The net loss claimed by plaintiffs amounts to $75,868.67. The amount of the loss is not in question. The only question is which deductible applies.

The first issue in the case is whether the bond continued to cover Oklahoma Morris Plan Company after title to the stock of Oklahoma Morris Plan Company was transferred from General Contract Finance to Liberty Loan on August 7, 1967.

■ Fidelity bonds indemnifying employers against dishonest acts of their employees are to be construed broadly. In this context, doubt as to subject matter covered by a fidelity bond should be resolved, where reasonably possible, in the insured's favor. Providence Washington Ins. Co. v. Stanley, 403 F.2d 844 (5th Cir. 1968), rehearing denied 406 F.2d 735 (1969); American Ins. Co. v. First National Bank in St. Louis, 409 F.2d 1387 (8th Cir. 1969); Hansen & Rowland v. Fidelity & Deposit Co. of Maryland, 72 F.2d 151 (9th Cir. 1934).

In Couch on Insurance 2d, 24.17 (1960), the following statement is found:

"[I]n the case of property insurance the insured must have had an insurable interest when the insurance contract was entered into * * * and when the loss is sustained. [And] [s]ince the right to indemnify accrues as of the time of the loss, the fact the insured thereafter parts with his

interest or assigns the policy, does not defeat recovery."

After reviewing the evidence in the case and applying the above principles, it is the opinion of this Court that the bond continued to cover Oklahoma Morris Plan Company as a named insured after title to the stock of Oklahoma Morris Plan Company was transferred from General Contract Finance to Liberty Loan. The bond protected both General and Oklahoma Morris Plan jointly and severally. Thus, both companies were insured against this type of loss. Since the Oklahoma Morris Plan Company was a named insured under the policy, it has a right to recover under the provisions of the policy.

And, as pointed out in 9 Appleman, Insurance Law and Practice 5303:

"* * * a stockholder in a private corporation has an insurable interest in the corporate property, to the extent of * * * actual loss * * *."

General Finance had such an interest, which was assigned to Liberty Loan in the transfer agreement. Therefore, Liberty may sue on the bond.

The language of the bond describes the companies covered and requires no construction. It covers "General Contract Finance Corporation, et al., St. Louis, Missouri (per joint assured rider attached) and all nominees organized by it for the purpose of handling any of its business transactions (hereinafter collectively called the assured), * * *"

The Joint Assured Rider attached provides, in part:

"1. From and after the time this rider becomes effective the Assured under the attached Bond are:

PER SCHEDULE 'A' ATTACHED"

Schedule "A" as amended provides, in part, as follows:

"IT IS UNDERSTOOD and agreed that Schedule 'A' of the attached Bond is amended as follows:

SCHEDULE 'A'

General Contract Finance Corporation and only the following Associated, Subsidiary or Affiliated Companies:

Oklahoma Morris Plan Company —Oklahoma"

Followed by a long list of other named companies, all of whom, collectively, are referred to in the bond as the "Assured".

While Oklahoma Morris Plan Company and the other named companies are designated as being "Associated, Subsidiary or Affiliated Companies", the bond contains no provision requiring that the several companies must continue to be associated with, subsidiaries of, or affiliated with General Contract in order to remain covered under the bond. If the defendant had desired to be automatically relieved from liability in the event General Contract should dispose of its stock in any of the named assureds, it should have written such a provision into the bond.

Defendant also makes the contention that it had no notice of the acquisition of Oklahoma Morris Plan by Liberty. This Court finds that the defendant was advised and had knowledge in advance of the impending acquisition in August of 1967. On December 1, 1967, defendant was specifically advised of the acquisition of General Contract's assets, including all the various subsidiary corporations, by a letter from plaintiff's insurance agent. In the letter defendant was requested to change the endorsements on the bond. No action upon this request was taken. Thus, after having full knowledge of the acquisition and the details thereof, Security retained the full premium for the entire period up to March 2, 1968. This is the same period during which defendant claims there is no coverage under the bond. Under these circumstances, where insurer denies coverage but retains the portion of premiums that was paid to cover Oklahoma Morris Plan, it is estopped to as-

sert, or waives, the defense of no insurable interest. Militzer v. State Farm Fire and Casualty Co., 412 S.W.2d 540 (Mo.App.1967); Lux v. Milwaukee Mechanics' Ins. Co., 30 S.W.2d 1090 (Mo. App.1930); Malo v. Niagara Fire Ins. Co. of New York, 282 S.W. 78 (Mo.App. 1926).

Accordingly, this Court is of the opinion that the plaintiffs are entitled to recover on the bond as a result of Williams' misappropriation.

Having found that plaintiffs are covered by the bond, the Court must now consider which deductible clause is applicable.

■ Defendant contends that either Insuring Clause 4 or 5 applies (see appendix). Defendant may be correct in the contention that such forgery comes within the coverage of Insuring Clause 4, as well as Insuring Clause 1, nevertheless, no deductible on account of forgery under Insuring Clause 4 is applicable, because the $25,000 deductible in Endorsement No. 5 (the endorsement relating to Insuring Clause 4) is specifically limited to "any loss or losses under Clause 4 of the attached bond caused by acts of any one person other than an Employee or acts in which such person is concerned or implicated * * *"

Thus, even though Insuring Clause 4 itself is broad enough to include employees, as well as persons other than employees, the applicable deductible rider does not apply to losses occasioned by the forgery of an employee.

As to the defendant's contention that Insuring Clause 5, with its Endorsement No. 4 providing for a $25,000 deductible, applies, the Court need look only to the language of the proviso in Insuring Clause No. 5 itself, which reads:

"Provided, however, if coverage in any amount is included under Forgery Insuring Clause 4 of this Bond, then coverage under this Insuring Clause shall not apply to any loss covered under the said Insuring Clause 4."

This disposes of defendant's contentions that the loss is covered by Insuring Clause 4 or 5. This Court finds that the Insuring Clause 1 applies with the deductible being $2,000.00 as set out in Endorsement No. 3.

■ It is the opinion of the Court that the defendant had reasonable cause to contest this claim and did so in good faith. Therefore, no penalty for vexatious delay is assessed against defendant.

Judgment will be entered in the sum of $75,868.67 less the $2,000.00 deductible, for a total amount of $73,868.67, plus interest at the rate of six percent from the date sworn proof of loss was filed on March 3, 1968.

APPENDIX

INSURING CLAUSES

EMPLOYEE DISHONESTY COVERAGE

1. BY REASON of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or misappropriation, or any other dishonest, criminal or fraudulent act of any of the Employees of the Assured, wherever committed and whether committed directly or in connivance or by collusion with others, including, but not limited to, loss of property through any such act of any of the Employees.

Any officer, clerk or employee of the Assured who holds certain powers to sign for the Assured, which powers have not effectively been rescinded, and who is serving in the Armed Forces or Civil Defense services of the United States or the United Nations shall, while so serving, be deemed, to be an officer, clerk or employee of the Assured with respect to losses under this Insuring Clause arising out of the exercise of said powers.

## FORGERY COVERAGE
### (Limited to checks, drafts, receipts, orders, etc.)

4. BY REASON of (a) the forgery or alteration of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries, or of, on or in any written instructions or advices addressed to the Assured by customers or banking institutions; or (b) the payment by the Assured of promissory notes which are payable at the Assured or which are or purport to be notes payable at the Assured under instructions of any depositor thereof, and which are actually paid by the Assured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements.

Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face to face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, shall be deemed to be forged as to such endorsement.

It is agreed that mechanically reproduced facsimile signatures shall be treated the same as handwritten signatures.

*UNAUTHORIZED SIGNATURES AND/OR ENDORSEMENTS COVERAGE*: If the Assured sustain any loss or losses by reason of having accepted, paid or cashed any checks or withdrawal orders, which bear unauthorized signatures and/or endorsements, such instruments shall be deemed to be forged as to such signatures and/or endorsements. It shall be a condition precedent to the Assured's right of recovery for loss under this coverage that the Assured shall have on file signatures of all persons authorized to sign such checks or withdrawal orders.

ALL-RISK FORGERY WITH EXTENDED COVERAGE (including all instruments in writing other than those covered by Insuring Clause 4.)

5. BY REASON of

(a) Forgery and/or alteration and/or counterfeiting;

(b) The Assured having acted upon, acquired or disposed of, in any way whatever, any securities, documents or other written instruments which prove to have been stolen or lost;

(c) The Assured having guaranteed in writing or witnessed any signature or signatures upon any securities or documents.

Provided, however, if coverage in any amount is included under Forgery Insuring Clause 4 of this Bond, then coverage under this Insuring Clause shall not apply to any loss covered under the said Insuring Clause 4.

It is agreed that mechanically reproduced facsimile signatures shall be treated the same as handwritten signatures.

SECURITY MUTUAL CASUALTY COMPANY
CHICAGO, ILLINOIS
ENDORSEMENT NO. 3

BASIC BOND DEDUCTIBLE RIDER

(For use with Bankers Blanket Bond, Special Broad Form (1958))

To be attached to and form part of Bankers Blanket Bond No. 11315 in favor of GENERAL CONTRACT FINANCE CORPORATION, ETAL, ST. LOUIS, MISSOURI and dated JUNE 1, 1966.

IN CONSIDERATION of the reduced premium charged for the attached bond, it is hereby agreed that:

1. The Company shall not be liable under Insuring Clause 1, 2, 3, 7, 10, 11, 12, 13 or 14 of the attached bond on account of any one loss, separately occurring, covered by any of the said Clauses unless the amount of such loss, after deducting all recoveries on account thereof, shall exceed the sum of TWO THOUSAND AND NO/100 ------------Dollars ($2,000.00.) and then the Company shall be liable for such excess only but not for more than the amount of the attached bond, or the amount of coverage under the applicable Insuring Clause if less than the amount of the attached bond.

2. The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly modified.

3. This rider shall become effective as of 7:00 a. m. of the 1st day of APRIL, 1966.

Signed, sealed and dated this 1st day of JUNE, 1966.

SECURITY MUTUAL CASUALTY COMPANY

By: /s/ _____ Wm. J. Zeiter _____
President

Attest: /s/ _____ James Baylor _____
Secretary

SECURITY MUTUAL CASUALTY COMPANY
CHICAGO, ILLINOIS
ENDORSEMENT NO. 5

INSURING CLAUSE 4 DEDUCTIBLE RIDER (AGGREGATE)

(For use with Bankers Blanket Bond, Special Broad Form (1958))

To be attached to and form part of Bankers Blanket Bond No. 11315 in favor of GENERAL CONTRACT FINANCE CORPORATION, ETAL, ST. LOUIS, MISSOURI and dated JUNE 1, 1966.

IN CONSIDERATION of the reduced premium charged for the attached bond, it is hereby agreed that:

1. The Company shall not be liable for any loss or losses under Clause 4 of the attached bond caused by acts of any one person other

than an Employee or acts in which such person is concerned or implicated, unless the amount of such loss or the aggregate of such losses after deducting all recoveries on account of such loss or losses shall be in excess of TWENTY FIVE THOUSAND AND NO/100 Dollars ($25,000), and then for such excess only, but in no event for more than the amount of this bond, or the amount of coverage under Clause 4, if the amount of such coverage is less than the amount of this bond.

2. The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly modified.

3. This rider shall become effective as of 7:00 a. m. of the 1st day of APRIL, 1966.

Signed, sealed and dated this 1st day of JUNE, 1966.

SECURITY MUTUAL CASUALTY COMPANY

By: /s/ ———————— Wm. J. Zeiter ————————

President

Attest: /s/ ———— James Baylor ————

Secretary