OKLAHOMA MORRIS PLAN COMPANY, a Corporation, and Liberty Loan Corporation, a Corporation, Appellee,

v.

SECURITY MUTUAL CASUALTY COMPANY, a Corporation, Appellant.

No. 71–1097.

United States Court of Appeals, Eighth Circuit.

Feb. 22, 1972.

---

Norbert J. Wegerzyn, Chicago, Ill., for appellant.

R. H. McRoberts, St. Louis, Mo., for appellee.

Before LAY and HEANEY, Circuit Judges, and HUNTER, District Judge.

LAY, Circuit Judge.

Appeal has been filed by the Security Mutual Casualty Company from a judgment awarded under a banker's blanket bond to Liberty Loan Corporation and Oklahoma Morris Plan Company, a subsidiary of Liberty Loan. Prior to August 1967 Oklahoma Morris Plan was a wholly owned subsidiary of General Contract Finance Corporation, a Missouri corporation engaged in consumer and commercial finance. The bond in question covered losses from forgery and other dishonest acts discovered during the period of coverage by the insureds, General Contract and certain of its named "associated, subsidiary and affili-

ated companies," including Oklahoma Morris Plan Company.

On August 7, 1967, General Contract Finance Corporation entered into a plan of reorganization with Liberty Loan. Pursuant to this plan General Contract [1] transferred substantially all of its assets to Liberty Loan, including the capital stock of Oklahoma Morris Plan Company and its other subsidiaries. Thereafter, in January of 1968, the loss in question was discovered.[2] On January 19, 1968, Security Mutual was notified of this loss. In response Security Mutual served notice of cancellation of the bond effective March 2, 1968, thirty days from the date of receipt of this notice by the insured. The unearned premium was refunded, but the insurer retained the full premium for the period preceding the effective date of the cancellation. This period included the date of discovery of the loss.

The district court held that coverage of Oklahoma Morris Plan did not terminate by reason of the merger; that the bond was not ambiguous in its specific coverage of Oklahoma Morris Plan as a named insured and not as a member of a class; and that Security Mutual was estopped to deny the continuation of coverage by reason of its prior knowledge of the transfer of assets and its retention of premium. *Oklahoma Morris Plan Company v. Security Mutual Casualty Company*, 323 F.Supp. 1057 (E.D. Mo.1970). We affirm the judgment awarded to Oklahoma Morris Plan Company on the basis of Judge Meredith's findings and conclusions of law.

█ Security Mutual urges that the bond covered only companies which were associated, subsidiaries or affiliates of the General Contract Finance Corporation and that when Oklahoma Morris Plan ceased to be a member of that class coverage of that company terminated. We agree with the district court that the bond itself was not ambiguous. It undertakes to insure "General Contract Finance Corp. and *only the following* Associated, Subsidiary or Affiliated Company . . . ." (Emphasis ours.) Forty-seven companies were so named on the schedule of Assureds, including Oklahoma Morris Plan Company. We think it clear, as the trial court pointed out, that the undertaking does not condition coverage upon membership in a stated class.[3] Coverage of Oklahoma Morris ensued from the fact

1. General Contract Finance Corporation was ultimately dissolved on August 2, 1968.

2. The manager of Oklahoma Morris Plan was found to have falsified loan documents and committed other dishonest acts resulting in a loss to the company of approximately $90,000.

3. In this regard, Security urges that the insuring clause is ambiguous and that the actual intent of the parties must determine its construction. If this were so, the evidence would almost conclusively establish that Oklahoma Morris Plan Company was intended to be named as a separate insured with no requirement that it remain within a class of subsidiary, affiliated or associated companies.

On July 15, 1966, General Contract requested that the definition of the Assured be changed to read: "General Contract Finance Corporation *and its* associated, subsidiary or affiliated companies, or any assignee. . . . " (Emphasis ours.) This requested change was rejected by the underwriter for Security Mutual, Scarborough & Company, with the reply: "As you might have gathered from the reading of our endorsement, we are unwilling to include the very broad all-inclusive language which would encompass affiliated companies."

Later, on August 8, 1966, Scarborough noted that the coverage of the bond had to be by "scheduled arrangement" [that is, with all of the insureds specifically named on an endorsement] ·rather than by "automatic form of coverage" because of the fact that General Contract did not wish coverage for one of its subsidiaries, Continental Investment Corporation. According to Scarborough the exclusion of this one subsidiary "converted coverage to a scheduled arrangement *to insure only those entities listed on the contract . . . .* " (Emphasis ours.) Thus, newly acquired or created affiliated or subsidiary corporations could be insured only after "notice to underwriters *and appropriate payment of additional premium.*" (Emphasis ours.) The Scarborough repre-

that it was specifically named as an assured on the bond.

■ The trial court further held that Liberty Loan acquired an insurable interest in the subsidiary by reason of the assignment of such interest from General Contract at the time of the merger. As a result, it was found Liberty Loan could sue on the bond. We do not rest Liberty Loan's right to recover on this reasoning.

The Bond provides:

"The first named Assured [General Contract] shall act for itself and for each and all of the Assured for all the purposes of the attached Bond."

Additionally the bond expressly reads:

"If the first named Assured ceases for any reason to be covered under the attached Bond, then the Assured next named shall thereafter be considered as the first named Assured for all the purposes of the attached Bond."

After the transfer of assets to Liberty Loan the General Contract Finance Company remained on the bond until August 1968 when it was dissolved. Under the provisions of the bond General Contract was the designated party to act on behalf of any of the other named assured.

This suit was commenced on January 17, 1969. At this time General Contract had been dissolved and Liberty Loan, who had previously acquired its assets, stepped into General Contract's shoes and assumed the right to act on its behalf under the terms of the merger. We think it clear under the transfer Liberty Loan succeeded to General Contract Finance Corporation's right under the bond to sue for the loss on behalf of Oklahoma Morris. Cf. Ocean Accident & Guar. Corp. v. Southwestern Bell Tel. Co., 100 F.2d 441, 444 (8 Cir. 1939). In resolving this question we are not dealing with any change in the insurer's risk as it related to the personal characteristics of the assignor or assignee. We do not pass on the question whether the merger could effect coverage for Liberty Loan as an additional assured. In view of the personal nature of the fidelity bond this would be highly doubtful. New .Amsterdam Casualty Co. v. Basic Building & Loan Association, 60 F.2d 950 (3 Cir. 1932). Cf. American Surety Co. of New York v. Republic Casualty Co., 42 F.2d 807 (8 Cir. 1930); Rendelman v. Levitt, 24 S.W.2d 211 (St. Louis App. 1930). The right of Liberty Loan to sue hinges not on the substantive right to sue as a named assured under the policy, but simply as General

sentative commented on this arrangement by saying, "I know that will probably work a hardship on the organization and will possibly place them in the position of having no insurance on the newly organized or acquired subsidiary if they fail to notify us. That's the way it's going to have to be."

Again, on September 2, 1966, Scarborough advised: "you will also note that it is necessary that we be informed if there are any subsequent additions *or deletions* to the Schedule of Assureds. Since we are insuring less than 100% of the eligible subsidiaries, we cannot have a bond on an automatic coverage basis while permitting the exclusion of some eligible Insureds." (Emphasis ours.)

As the above correspondence indicates, it was the intention of Security Mutual to insure only those companies specifically listed in Schedule "A" and not to insure the subsidiaries of General Contract as a

class. Further, Security Mutual intended to adjust the bond premium as additions and deletions were made. And more important, deletions could not be made without notifying the insurer. If coverage does not automatically ensue from class membership, it should follow that coverage does not automatically terminate because of loss of class membership. Thus, as the trial court recognized, when a bond extends coverage to only those entities specifically named in the contract, even though these are identified as "subsidiaries," the bond must contain a specific provision requiring these entities to remain as subsidiaries before coverage can terminate on such a condition. No such provision appears in the bond in question. See General Finance Corp. v. Fidelity & Casualty Co. of N.Y., 439 F.2d 981, 984 (8 Cir. 1971) [conditions of forfeiture must be specifically stated in the policy].

Contract's assigned designee to sue in its place for the loss of the subsidiary.[4]

The insurer raises a separate question as to the proper deductible to be applied under the bond. We affirm the trial court's finding that the lesser deduction applies. We do so for the obvious reasons set forth in his opinion. 323 F. Supp. at 1061.

The judgment is affirmed.

4. Although the bond contemplates that only one party, the parent or the subsidiary, should act for all, Oklahoma Morris Plan was a named assured and as such was a real party in interest in the suit. There can only be one loss and one recovery. The fact that the judgments run jointly to both plaintiffs cannot create any prejudice to the insurer.