GARDNER–DENVER COMPANY,
Plaintiff,

v.

DIC–UNDERHILL CONSTRUCTION
COMPANY et al., Defendants and
Third-Party Plaintiffs,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Third-Party Defendant.

No. 75 Civ. 5417.

United States District Court,
S. D. New York.

June 22, 1976.

Blackman, Lefrak, Feld & Fischer, New York City, for plaintiff.

Patrick J. Falvey, Gen. Counsel, by Alan J. Littau, Asst. Chief, Litigation Div., New York City, for defendants and third-party plaintiffs.

Greenhill & Speyer by Simon Greenhill, Dennis M. Perlberg, New York City, for third-party defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Plaintiff in this diversity action seeks to recover from defendants the value of an air compressor which it allegedly rented to defendants Dic-Underhill on or about August 3, 1973 for their use on the construction site of the World Trade Center in New York, owned by defendant Port Authority. This compressor was not returned to plaintiff, according to defendants, because it was stolen from the construction site. Defendants, in turn, seek indemnity for any possible loss in this action from Dic-Underhill's insurer, St. Paul, with the Port Authority basing its claim upon a subrogation clause in the contract between itself and Dic-Underhill. In response, St. Paul has moved for summary judgment pursuant to Rule 56, Fed.R. Civ.P., and the court grants this motion.

The facts are not disputed.[1] Dic Concrete Corp. and Underhill Construction Corp. were parties to a contract with the Port Authority for the performance of concrete construction in connection with the construction of the World Trade Center. Prior to the date of the alleged theft, St. Paul issued to defendants Dic-Underhill a Contractors' Equipment insurance policy, numbered 365 JD 4974, insuring certain portable equipment[2] against "all risks of [p]hysical loss or damage from any external cause", with certain enumerated exceptions.

On or about August 16, 1973, the mobile compressor was allegedly stolen from the World Trade Center jobsite and was never returned. By letter of the same date, Dic-Underhill Joint Venture notified Armitage & Co., Inc. of the loss, since Armitage was the agent for American Home Assurance Co., the insurance carrier of the Port Authority and its contractor, Dic-Underhill, for all work at the World Trade Center. Subsequently, on August 20, 1973, Armitage forwarded the claim to Edward D. Weinstock, Inc. for adjustment.

From August 16, 1973 until March 31, 1975, Dic-Underhill and the Port Authority believed in good faith that the claim would be covered by American Home Assurance Co. However, by letter dated March 27, 1975 and received March 31, 1975, Dic-Underhill was informed by the Weinstock firm that the loss of the compressor was outside the scope of property covered under defendant's policy of builder's risk insurance, and that the claim would therefore be disallowed.

On April 29, 1975, Dic-Underhill Joint Venture notified its own insurance broker, John C. Vorbach Company, of the loss. By letter dated April 30, 1975, the Vorbach Company notified St. Paul's agent, The Maloy Agency, Inc., and the agent forwarded the letter of notification to St. Paul, which received it on May 3, 1975.

On September 2, 1975, St. Paul wrote to Dic-Underhill Joint Venture and informed them that "after careful consideration", St. Paul had concluded that the loss did not fall within the protection of the policy. Finally,

---

1. Counsel for defendants and third-party plaintiffs admitted, in his letter to the court dated April 6, 1976, that "[t]here are no real facts in controversy. The dates of notice and the date of the theft are uncontroverted. There is nothing more than a question of law for this Court."

2. The contract of insurance provides coverage for "contractor's equipment, as listed below, the property of the Insured or the property of others in the custody or control of the Insured, for which they may be liable." An attached endorsement indicates that the coverage included, *inter alia*, "all portable equipment usual to Insured's concrete construction operations, consisting principally of salamanders, shanties, tools, generators, vibrators, tarpaulins, grinding machines, surveyors [sic] instruments, clothing and tools (used on jobs and belonging to the Insured or their employees) lumber and other similar property of a mobile or floating nature in the Insured's business."

on December 2, 1975, the instant suit was commenced by Gardner-Denver.

On the basis of the above chronology, St. Paul moved for summary judgment, arguing that defendants (Dic-Underhill, as the insured, and the Port Authority, as subrogee) have failed to comply with that provision of their insurance contract which requires that the insured notify St. Paul of any loss "as soon as practicable".[3] On the authority of a number of New York cases, St. Paul contends that the interval between the alleged theft in August of 1973 and the notification given to its agent in April of 1975 is unreasonable and amounts to a contractual violation as a matter of law.[4]

▄▄▄ It is established New York law that compliance with the notice provision of an insurance contract is a condition precedent to an insurer's liability, and that an insurer need not show prejudice before it can assert the defense of noncompliance. *Security Mutual Insurance Company of New York v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (Ct.App.1972). Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy. *Id.* at 905, 293 N.E.2d at 78; *Deso v. London & Lancashire Indemnity Company of America,* 3 N.Y.2d 127, 164 N.Y.S.2d 689, 691, 143 N.E.2d 889, 890 (Ct. App.1957). A provision that notice be given "as soon as practicable" after an occurrence merely requires that notice be given within a reasonable time under all the circumstances. *Id.; Security Mutual, supra,* 340 N.Y.S.2d at 906, 293 N.E.2d at 79.

Since it is not disputed that St. Paul's agent did not receive notice until April 30, 1975, the question is whether this delay of some twenty months after the date of the theft is unreasonable as a matter of law.

Absent some excuse or mitigating circumstances, courts have passed judgment on the insured's compliance with notice provisions, and have found much shorter delays to be unreasonable. (51 days, *Deso, supra* ; 27 days, *Reina v. United States Casualty Co.,* 228 App.Div. 108, 239 N.Y.S. 196 (App. Div., 1st Dept. 1930), *aff'd* 256 N.Y. 537, 177 N.E. 130 (1931); 30 days, *Mason v. Allstate Insurance Co.,* 12 A.D.2d 138, 209 N.Y.S.2d 104 (App.Div., 2d Dept. 1960)). However, "[m]itigating circumstances may arise if the insured lacks, or is incapable of acquiring, knowledge of the occurrence; or the insured is out of the state; or in good faith reasonably believes there is no policy coverage or that the insured was not liable on the main action. [citations omitted]." *Kason v. City of New York,* 83 Misc.2d 810, 373 N.Y.S.2d 456, 459 (Sup.Ct., N.Y.Cty. 1975). Where these excuses are asserted by the insured in mitigation of his failure to provide prompt notice to the insurer, the New York courts have apparently allowed the jury to evaluate the reasonableness of the insured's conduct. *Deso, supra,* 164 N.Y.S.2d at 691, 143 N.E.2d at 890; *Allstate Insurance Co. v. Manger,* 30 Misc.2d 326, 213 N.Y.S.2d 901, 905 (Sup.Ct., Queens Cty. 1961).

▄▄▄ However, defendants do not rely on any of these accepted mitigating theories. Rather, they argue that their twenty-month delay in notifying St. Paul is excused by their good faith belief that their loss would be reimbursed by the American Home Assurance Company. Although it appears possible that there might be a serious question as to the reasonableness of their delay from the end of March, 1975 to the end of April, 1975 which could properly be entrust-

---

**3.** "Notice of Loss. The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with the Company or its agent within ninety (90) days from the date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss."

**4.** Dic-Underhill and the Port Authority do not appear to question that the time, for purposes

of judging the reasonableness of the notification, is to be measured from the date of the alleged theft. They only argue that such notification was "as soon as practicable", in view of the circumstances. They specifically do not argue that they are not, even yet, obliged to give notice, since the "occurrence" upon which their claim would be based is an adjudication of their liability to plaintiff in the instant suit.

ed to a jury for decision, defendants have cited no case, nor has the court's research discovered any case, in which notification of the "wrong" insurer has excused a failure to promptly notify the insurer being sued.

As a matter of fact, the law in New York seems to be that timely notification to another insurer does not excuse failure to notify the insurer being sued as soon as practicable. *Mason, supra; Reina, supra.* In *Mason,* the insured had inadvertently notified the wrong insurer concerning an automobile accident, and the proper insurer was not notified until a substantially later time. After reviewing the circumstances which may be legally sufficient to excuse a failure to promptly notify the proper insurer, the Appellate Division found "no extenuating circumstances in the instant case." "[N]egligence in notifying the wrong insurer does not excuse failure to give notice to the proper one." 209 N.Y.S.2d at 113.

The facts of this suit seem to present an even stronger case for application of the principle established by *Mason* and *Reina.* In this case, there seems to be no doubt that the defendants knew that they had a policy of insurance with St. Paul and suspected that they might be held liable for the compressor's loss. Their decision to look to American Home Assurance for reimbursement was apparently not based on any confusion as to the identity of the insurer, but rather reflected an election between those insurers whose policies might arguably cover the loss. No circumstance has been brought to the attention of the court which would have prevented defendants from no-

tifying St. Paul at the time of loss in order that that insurer might investigate the occurrence—whether or not a claim might later be filed.[5]

Accordingly, the court finds that Dic-Underhill failed to notify St. Paul "as soon as practicable" after discovery of the loss of the compressor, and that that failure constitutes a breach of a material condition precedent to St. Paul's liability under its contract of insurance. Accordingly, both Dic-Underhill and its subrogee, the Port Authority, are contractually barred from recovery against St. Paul.

The only remaining question is whether St. Paul waived its defense to Dic-Underhill's claim by considering the claim after it was finally filed,[6] and by rejecting the claim in its letter dated September 2, 1975.[7] In support of their argument that St. Paul waived its policy defense based on lack of timely notice, Dic-Underhill and the Port Authority merely note that over four months elapsed between filing of the claim and final rejection, and that, during that period, St. Paul did not indicate to any representative of the insured that the claim was improper for failure to give the requisite notice. In these circumstances, the court finds neither that "manifested intention to release a right" necessary to infer a waiver, nor any legal prejudice to the insured necessary for a finding of estoppel against the insurer. *See Allstate Insurance Company v. Gross,* 27 N.Y.2d 263, 317 N.Y. S.2d 309, 314, 265 N.E.2d 736, 739 (Ct.App. 1970); 31 N.Y.Jur., Insurance § 1589 [8] (1963). The letter from St. Paul disallow-

---

5. The contract of insurance does, after all, require notification of any "loss, damage or occurrence" which "*may* give rise to a claim." (emphasis added)

6. Counsel for Dic-Underhill and the Port Authority has not vigorously advanced the waiver argument. No authorities are cited in support of the argument. Moreover, counsel at one point in argument withdrew the waiver point entirely, but then decided to stand by his assertion of waiver.

7. The entire text of that letter is as follows: "We have completed our investigation in connection with the above captioned claim and after careful consideration we feel that

this loss does not fall within the protection of the policy."

8. "In general, to operate as a waiver by the company of, or an estoppel to assert, a condition in the policy limiting the time in which suit shall be brought after the loss, the act or declaration relied upon must be done or made during the running of the period of limitation, or at least commenced during such period, since acts taking place entirely after the expiration of the period cannot be said to have induced the insured not to bring action within the period." While this quotation pertains most directly to provisions, such as that in the instant policy, which require that suit be brought within a specified time after discovery of the loss or

938

ing the claim [9] is by no means an unequivocal statement that the loss at issue simply was not covered by the policy; it is also susceptible of a construction whereby the claim was disallowed due to lack of timely notice. Had the letter based the disallowance on some other ground, then there might be some basis for inferring that the insurer had chosen to waive the defense of improper notice. However, such does not appear to be the case here.

Accordingly, the court finds that St. Paul did not waive its defense based upon Dic-Underhill's failure to comply with the contractual requirement of prompt notification. The motion for summary judgment is granted on this basis, and the court need not consider the other ground advanced by St. Paul as a basis for summary judgment.

SO ORDERED.

occurrence giving rise to the claim, the rationale is equally applicable to provisions requiring notification to the insurer "as soon as practicable". In this case, the claim itself was filed with St. Paul long after the expiration of a "reasonable time" after the loss, and any action or inaction by St. Paul could not have prevented the insured from correcting that fact.

9. *See* note 7, *supra.*