The HOME INSURANCE COMPANY, a New Hampshire corporation, et al., Plaintiffs,

v.

SERVICE AMERICA CORPORATION, f/k/a Servomation Corporation, a Delaware corporation, Defendant.

No. 86 C 4165.

United States District Court,
N.D. Illinois, E.D.

July 1, 1987.

---

John J. Witous, Henry R. Daar, Norman A. Miller, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for plaintiffs.

Dale A. Cooter, Donna S. Mangold, Cooter & Gell, Washington, D.C., Alan Mandel, Isham, Lincoln & Beale, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Before this court is plaintiff Home Insurance Company's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, plaintiff's motion is granted.[1]

## I. FACTS

On January 1, 1985, plaintiff, Home Insurance Company ("Home"), issued its fire insurance policy No. TR 30 82 29 ("policy") to City Investing Company ("City Investing"), a New York incorporated holding company. When the policy was issued, defendant, Service America Corporation ("SAC"), was one of City Investing's wholly-owned subsidiaries. The named insured under the policy was "City Investing Company and/or any affiliated or subsidiary organization." Thus, coverage under the Home policy extended to SAC as a subsidiary of City Investing.

On May 14, 1985, City Investing sold SAC to Allegheny Beverage Corporation ("ABC"). As of May 14, 1985, SAC ceased to have any affiliation or subsidiary status with City Investing. As a subsidiary of ABC, SAC fell into the class of insured under ABC's fire insurance policy with the Hartford Insurance Company ("the Hartford").

On July 31, 1985, ten weeks after the sale of SAC to ABC, a fire occurred at the Arlington Park Racetrack where SAC operated several concession stands. The fire allegedly damaged SAC's property and caused interruption to SAC's business. The day after the fire, SAC notified the Hartford of the loss sustained. SAC claimed a loss in excess of $10 million, but recovered only $500,000 because of a specification in the Hartford policy which limited unscheduled locations to this amount. Apparently, SAC or ABC had failed to procure coverage for unscheduled as well as scheduled locations and, as a result, suffered substantial uninsured losses under the Hartford policy.

On or near May 1, 1986, nine months after the Arlington Park Racetrack fire, SAC sent Home a claim and proof of loss statement for the loss incurred by the fire. Home denied coverage, indicating SAC was no longer an insured at the time the loss occurred. Home advised SAC that even if

---

1. As a related matter, defendant's motion to file an amended response to plaintiff's motion for summary judgment is granted. This court considers the amended memorandum as defendant's reply for purposes of deciding this motion.

SAC were covered by the policy, SAC failed to meet conditions precedent to coverage such as timely notification and timely filing of a proof-of-loss statement. Home then initiated this lawsuit seeking a declaration of noncoverage under the policy.

## II. DISCUSSION

### A. *Local Rule 12(f)*

A motion for summary judgment may only be granted when the moving party establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *County of Milwaukee v. Northrup Data Systems,* 602 F.2d 767, 774 (7th Cir.1979). Under Local Rule 12 of the Rules of the United States District Court for the Northern District of Illinois, a party moving for summary judgment, in addition to affidavits and other material referred to in Fed.R.Civ.P. 56(e), must submit a statement of material facts as to which there is no genuine dispute. Local Rule 12(e) (N.D.Ill.). The party opposing summary judgment must then file a "statement of genuine issues" setting forth material facts as to which there exists a genuine issue. Local Rule 12(f) (N.D.Ill.). To the extent that the "statement of genuine issues" fails to controvert the moving party's statement of material facts, those matters are deemed admitted for purposes of deciding the Rule 56 motion. Local Rule 12(f) (N.D.Ill.). *People ex rel. Schoepf v. Board of Education,* 606 F.Supp. 385, 386 (N.D.Ill.1985). SAC failed to submit a statement of genuine issues to controvert the facts asserted by Home in support of Home's motion for summary judgment. Consequently, the court considers admitted all facts stated by Home and need only address whether Home is entitled to summary judgment as a matter of law.

### B. *Conflicts of Law Principles*

Conflicts of law principles relevant to insurance contracts in Illinois require application of the laws of the state where the insurance policy is deemed executed. *Home Ins. Co. v. Service Am. Corp.,* 654 F.Supp. 157, 159 (N.D.Ill.1987). In a prior ruling on the same insurance policy in question here, this court determined that "the last act necessary to make the insurance contract effective was Home's acceptance and execution in New York City." *Id.* No new evidence has been put forth by either party to merit disturbing this decision. As such, New York law will be applied to determine whether Home's motion for summary judgment may be granted.

### C. *Named Insureds Under the Policy*

At issue in this motion is whether, as a matter of law, SAC may recover losses sustained from the racetrack fire when, at the time of the fire, SAC was no longer a subsidiary of the holding company covered by Home's policy. This court finds that SAC cannot recover because it was not a named insured under the policy at the time the loss occurred and that even had it been such, SAC failed to adhere to the conditions precedent to recovery.

SAC cannot recover under Home's policy. The policy requires SAC to be a subsidiary or affiliate of City Investing as a prerequisite to coverage. At the time of the fire, SAC was neither. City Investing sold SAC to ABC ten weeks prior to the fire. SAC cannot be simultaneously a wholly-owned subsidiary of both companies. Moreover, the case cited by SAC in support of the contention that it continues to remain insured is irrelevant, if not self-defeating. *Oklahoma Morris Plan Co. v. Security Mut. Casualty Co.,* 323 F.Supp. 1057 (E.D. Mo.1970).

In *Oklahoma Morris,* the insurer issued an endorsement that specifically named the subsidiary as an insured. *Id.* at 1060. The court found that the subsidiary in *Oklahoma Morris* remained insured, despite its transfer to another corporation, because it was a specifically named insured, not only a member of a class of insureds (subsidiaries and affiliates). *Id.* The appellate court affirmed the district court's ruling against the insurer because it was clear that the subsidiary was covered as a specifically named insured, "not as a member of a class." *Oklahoma Morris Plan Co. v. Security Mut. Casualty Co.,* 455 F.2d 1209, 1211 (8th Cir.1972).

■ In the present case, SAC was never a specifically named insured. Instead, SAC, as a subsidiary, was only a member of a class of insureds. When SAC was sold to ABC, SAC was removed from the class of insureds by its loss of status as a subsidiary of City Investing. Home was not required to specifically delete SAC from the policy because SAC was never a specifically named insured. Instead, SAC's sale to ABC changed its status as a subsidiary of City Investing and thus inherently removed SAC from the class of insureds covered by the City Investing policy.

SAC's argument that it paid its premium directly to Home and that Home retained the unearned premium is irrelevant. SAC paid its pro rata portion of the premium to Home because it was assuming the burden of its coverage, as a subsidiary under City Investing, while it was a subsidiary. Payment of the premium directly to Home has no bearing on whether SAC was a specifically named insured. Rather, the method of payment was merely an accounting system worked out between the named insured, City Investing, and its subsidiaries.

Similarly, Home's retention of the unearned premium has no effect on the effective date of cancellation. SAC asserts that an insurer who retains an unearned premium is estopped from denying liability. This proposition is too broad. *Oklahoma Morris* uses the retention of an unearned premium as a factor to support an interpretation of a contractual ambiguity. *Oklahoma Morris Plan Co. v. Security Mut. Casualty Co.*, 323 F.Supp. at 1060. The case does not say that retention of an unearned premium, alone, will estop an insurer from denying liability.

Contrary to SAC's argument, New York law states that temporary retention of an unearned premium by an insurer, standing alone, does not constitute any evidence of an intention by the insurer to abandon the cancellation or to extend a policy's coverage. *Travelers' Ins. Co. v. Pomerantz*, 246 N.Y. 63, 158 N.E. 21, 23 (N.Y.1927). The only New York case cited by SAC in support of its argument is *D'Onofrio v. Safeco Ins. Co. of America*, 70 A.D.2d 945,

417 N.Y.S.2d 778 (1979). The facts in *D'Onofrio* are not analogous to the situation in the present case. *D'Onofrio* involved an insurer who notified the insured that the policy would be reinstated after receipt of the unpaid premium. *Id.* at 779. The court found that once the insurer received this premium, retention of the premium misled the insured to believe that it was insured. *Id.* In the case at bar, Home never misled SAC into believing that Home would reinstate the policy after SAC's sale to ABC nor did SAC believe it was covered at the time of the loss. SAC's conduct belies any such claim. Three weeks after the fire, SAC requested a return of the unearned premium, noting in its letter that the effective date of cancellation was May 14, 1985, the day City Investing sold SAC to ABC. The endorsement deleting coverage, prepared by SAC's insurance broker to facilitate the return of the unearned premium, recognizes the date of cancellation as May 14, 1985. The unearned premium has been returned to SAC's broker for an amount calculated by using May 14, 1985 as the date of cancellation. The only reason SAC has not received the premium is because SAC, after being denied full coverage under the Hartford policy, ordered the broker not to forward it the premium.

### D. *Timely Notification*

■ Finally, even if SAC could raise a legitimate argument of ambiguity in the policy's language or provide reasons why it should be considered a named insured, summary judgment for Home would still be appropriate. SAC failed to comply with an essential condition precedent for recovery. SAC did not provide timely notification to Home when the policy required that notice be provided "as soon as practicable" after the loss was known to SAC.

New York law is clear that an insurer is relieved of liability if an insured fails to meet the notice requirements set forth by the policy as a condition precedent to recovery. *Gardner-Denver Co. v. Dic-Underhill Const. Co.*, 416 F.Supp. 934, 936 (S.D. N.Y.1976), *citing Security Mut. Ins. Co. of New York v. Acker-Fitzsimmons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 905, 293

N.E.2d 76, 79 (1972): An insurer is not required to show that it has been prejudiced by untimely notification. *Id.* Instead, the insured must provide a valid excuse for its failure to meet the notice requirement. *Id.* New York law requires that an objective test be applied to determine whether the delay in notification was reasonable as a matter of law. *Id.* In the case at bar, SAC asserts that it could not notify Home earlier because the executive staff of ABC was unaware of SAC's coverage by Home until nine months after the fire, at which time ABC notified Home. SAC, in support of this excuse, cites irrelevant third-party liability cases and a New York case that states a seven and one-half month delay was not unreasonable where the insured thought that it had provided all relevant information to the insurer. *Mighty Midgets Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 416 N.Y.S.2d 559, 563, 389 N.E.2d 1080 (1979). SAC argues that the reasonableness of its excuse is a question for the jury.

Although submission of certain excuses to the jury to determine reasonableness may be appropriate, this court finds SAC's claim is not legitimate as a matter of law. SAC's misplaced reliance on *Mighty Midgets* stems from its self-serving omission of several important facts. In *Mighty Midgets,* the insured timely submitted all relevant information to an agent of the principal insurer. *Id.* at 561. The court found that the insured's failure to notify the principal insurer until seven and one-half months after the loss was reasonable because of an agent's mishandling of the insured's original, timely notification. *Id.* at 561–562. In the present case, SAC failed to provide any information to Home or to an agent of Home until nine months after the fire. SAC's excuse rests on the failure of SAC's current holding company to ascertain coverage by another insurer, not by another party within the same insurer.

SAC proffers a curious argument given SAC's prior contention that SAC should be considered a named insured under Home's policy. If SAC considers itself the named insured under Home's policy, ABC would not have the duty to ascertain the existence of coverage and notify the plaintiff of the loss. Instead, SAC would have such a duty, as it, not ABC, is allegedly the insured party. SAC is unable to state any reason for failing to notify Home immediately. SAC knew of the Home policy. SAC knew of the loss, as demonstrated by SAC's prompt notification of ABC's insurer, the Hartford. SAC's failure to put forth any reason for its delay in notifying Home, coupled with the undisputed facts of this case, allows this court to hold, as a matter of law, that SAC's claim is barred. *American Stevedores, Inc. v. Sun Ins. Office, Ltd.*, 42 Misc.2d 516, 248 N.Y.S.2d 487, 489 (1964) (insured's failure to timely notify insurer, as required by the policy, voided policy where no showing of any mitigating circumstances to justify or excuse the delay was made).

## III. CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for summary judgment.

IT IS SO ORDERED.