GERALD MASON et al., Respondents-Appellants, v. ALLSTATE INSURANCE COMPANY, Respondent, and STANDARD ACCIDENT INSURANCE COMPANY, Appellant.

Second Department, December 27, 1960.

*Peter T. Affatato* and *George T. Nicholson* for appellant.

*Melvin Wolinsky* for Gerald Mason and another, respondents-appellants.

*John G. Logue* and *William D. Van Pelt* for respondent.

NOLAN, P. J. Plaintiffs are judgment creditors of one George W. Jervas (son of George Jervas) and one Carolee Cochrane (now Mrs. George W. Jervas). Their judgment was obtained in an action brought by them against George W. Jervas and Miss Cochrane, who was then his fiancée, to recover damages for personal injuries sustained on December 9, 1956, when their automobile collided with one operated by Mr. Jervas (the son) and owned by Miss Cochrane.

Execution on the judgment having been returned unsatisfied, plaintiffs brought the present action against the defendants Standard Accident Insurance Company and Allstate Insurance Company (hereinafter respectively referred to as Standard and Allstate), pursuant to section 167 of the Insurance Law, to recover upon two liability insurance policies, one issued by Allstate to George Jervas (the father), and the other issued by Standard to Carolee Cochrane.

The automobile owned by Miss Cochrane was a 1951 Ford, which had formerly been owned by her present father-in-law, George Jervas, to whom Allstate had issued a liability policy covering the vehicle on January 13, 1956. The term for which the policy was to run was one year. Subsequently and in November, 1956, the father, George Jervas, gave the automobile to his son, George W. Jervas, and to his future daughter-in-law, Miss Cochrane. The gift was effectuated by the father's indorsement and delivery of his registration certificate and by physical delivery of the automobile. The Allstate policy, however, was not delivered or assigned to his son or Miss Cochrane. At the time of the accident the automobile was still registered in the father's name and his license plates were on it, although there appears to be no dispute that he had completely relinquished ownership and control of it.

After the gift was completed, Standard issued a liability policy, dated November 21, 1956, for a term of one year from said date, covering the automobile. The policy was issued to Miss Cochrane, who was found, on sufficient evidence, to have been its owner at the time of the accident.

Allstate's policy was not cancelled on the transfer of ownership of the insured automobile, so that, at the time of the acci-

dent there were, apparently, two liability policies in force, covering the same vehicle. Allstate's policy, by its terms, insured George Jervas, the owner named therein with respect to the operation of the owned automobile and also insured any other person operating the automobile with his consent. Standard's policy, of course, contained a similar provision with respect to operation of the automobile by Miss Cochrane or by any other person with her consent.

Prior to the father's transfer of the automobile to him and to Miss Cochrane, George W. Jervas had used it continuously for his own purposes with his father's consent and, concededly, at the time of the accident was using it with Miss Cochrane's consent.

The present action was tried in Queens County before the court without a jury, and a judgment was entered by direction of the court in favor of plaintiffs against Standard, and dismissing the complaint against Allstate. Plaintiffs appeal from the judgment insofar as it dismisses the complaint against Allstate, and Standard appeals from the entire judgment.

Insofar as the appeal by Standard is from the provision of the judgment which dismisses the complaint against Allstate, it may be disposed of quickly. The theory upon which Standard claims the right to challenge that dismissal is not disclosed, nor are we aware of any right of appeal by Standard from that portion of the judgment (cf. *Nekris* v. *Yellen,* 302 N. Y. 626; *Baidach* v. *Togut,* 7 N Y 2d 128, 130; *Hilton* v. *Steinman,* 276 App. Div. 1089). Hence, Standard's appeal from that portion of the judgment should be dismissed. The issue is presented, however, by plaintiffs' appeal, and we are required in any event to decide it.

We shall first consider, therefore, the question of Allstate's liability. By its policy Allstate agreed to pay for the insured all damages which the insured should be legally obligated to pay because of bodily injuries arising out of ownership, maintenance or use of the automobile which was involved in the accident. The word " insured " included the named insured George Jervas and any other person " legally responsible for its use, provided the actual use of the automobile " was by " the named insured or spouse or with the permission of either." If George W. Jervas, therefore, was operating the automobile with his father's permission within the meaning of the policy provisions or of section 167 of the Insurance Law, at the time of the accident, Allstate was liable to plaintiffs for the damages they sustained, within the limits provided by its policy.

In our opinion, however, the complaint against Allstate was properly dismissed. We find no provision of Allstate's policy,

other than that above mentioned, which could conceivably support a claim by plaintiffs against that defendant, and, as has been stated, there is ample support in the record for the trial court's determination of the question of ownership of the automobile, at the time of the accident. It is urged that Allstate's liability is established by its report to the Bureau of Motor Vehicles after the accident, in which it stated that its policy applied to the operator but not the owner of the Jervas automobile. That statement was, of course, relevant and competent proof, as an admission by Allstate, but was no more conclusive against it than any other extrajudicial admission, and was presumably considered by the trier of the facts, who found to the contrary on contradictory evidence.

Allstate's liability under its policy was limited by certain conditions which applied to all coverages thereby provided. One of them, No. 4, prohibited assignment of any interest in the policy without its consent. Consequently, the coverages would not follow a transfer of title to the automobile, unless Allstate had agreed to accept the new owner as a party insured (cf. *Truglio* v. *Zurich Gen. Acc. & Liab. Ins. Co.*, 247 N. Y. 423). There was no evidence that Allstate had given any such consent on the transfer of title of the automobile from George Jervas to his son or future daughter-in-law. Condition No. 7 provided that the insurance afforded by the policy applied only to accidents and occurrences happening " (3) as respects the owned automobile, *while it is owned as stated* on the Supplement Page " (emphasis added).

Paragraph 6 on the Supplement Page declared, with certain exceptions not here relevant, that the named insured was the sole owner of the automobile. Reading that declaration with the above-mentioned portion of Conditions 4 and 7, we think that the conclusion is inevitable that, according to its policy, Allstate's coverage ceased upon the transfer of ownership from George Jervas, the named insured, to his son and Miss Cochrane.

The result would be no different if the Allstate policy had not contained the conditions above referred to, unless it had contained specific provisions continuing the coverage. As we have stated, the only theory on which Allstate could be held liable is that George W. Jervas was operating the owned automobile with his father's permission (see in addition to policy provisions, Vehicle and Traffic Law, § 388, formerly § 59; Insurance Law, § 167). But once we accept, as we must, the finding that the father had parted with title, possession and control, and the right to control the " owned automobile ", it follows that the clause in the policy which covered the son while operating

the car .with his father's consent, ceased to be effective as a matter of law. That clause is inserted in policies of liability insurance to meet statutory requirements (see Insurance Law, § 167) and to give protection to owners affected by laws which provide that the owner of a car may not escape liability for the negligence of the operator on the ground that he was not operating the automobile on the owner's business if he was operating it with the owner's permission (see Vehicle and Traffic Law, § 388, formerly § 59). The clause was never intended to extend the liability of the insurer of an owner of an automobile to cover the negligence of one to whom the automobile had been sold or otherwise transferred any more than statutes such as our Vehicle and Traffic Law were intended to make the owner of an automobile liable for negligence in its operation after he had parted with title and control. The owner of an automobile does not operate it with the permission of the person from whom he has purchased it within the meaning of the Vehicle and Traffic Law or the Insurance Law, nor does he so operate it within the meaning of a liability policy provision insuring against loss from such operation, unless the policy specifically covers such a situation.

The rule with respect to policy provisions such as those here involved is clearly stated in the dissenting opinion of FULD, J., in *Switzer* v. *Merchants Mut. Cas. Co.* (2 N Y 2d 575, 583) as follows: " That provision was designed to render the insurer responsible if the automobile was within the actual control of the insured, for, it may not be gainsaid, the grant of permission to use an automobile by one having no control over it would be meaningless. Once an owner effects a sale, even though a contract of conditional sale (Vehicle and Traffic Law, § 59), he gives up all control over the vehicle and is powerless to affect its use; it would, therefore, be the loosest use of terms, the barest of fictions, to say that the new owner, when operating the car, is doing so with the ' permission ' of the vendor — certainly, within the meaning of the policy terms." That there was no disagreement with Judge FULD's reasoning in that respect, insofar as the general application of the rule is concerned, is indicated by the majority opinions in the same case and in *Phoenix Ins. Co.* v. *Guthiel* (2 N Y 2d 584) in which Judge BURKE said (pp. 589, 590):

" We have recently held that coverage created or arising out of the ownership, maintenance or use of a described automobile ceases and terminates with the transfer of the ownership of the described automobile, unless notice has been given to the insurer and the insurer consents to the extension of coverage. (See

*Ireland* v. *Firemen's Fund Ind. Co.,* 281 App. Div. 1007, affd. 1 N Y 2d 655; see, also, *Lavine* v. *Indemnity Ins. Co.,* 260 N. Y. 399.) * * *

"Buckle [the named insured] at the time of the collision was not the owner of the car (Vehicle and Traffic Law, § 59) nor was the use of the car under the direction or control of Buckle within the meaning of the ' ownership, maintenance or use ' provisions of the contract."

The difference of opinion between the learned Judges who decided the *Switzer* and the *Phoenix* cases arose from the fact that in those cases, as in the instant case, the vendor of the vehicle involved in the accident complained of had permitted the vendee to continue to use the vendor's license plates in the operation of the vehicle. Under the special circumstances existing in the *Switzer* case, that fact was held to constitute permission to operate the vehicle within the meaning of the insurance policy under consideration. In the *Phoenix* case, under different circumstances the permission to use the license plates was denied effect as extending the coverage of the policy there involved.

Of course, if the seller or transferor does not remove his license plates and permits the new owner to operate the automobile with them on, he is estopped to deny ownership and may be held liable for injury or damage resulting from operation of the automobile (*Switzer* v. *Aldrich,* 307 N. Y. 56; *Reese* v. *Reamore,* 292 N. Y. 292). Such was the case here; and if George Jervas had been made a party to the action brought by plaintiffs against his son and Miss Cochrane, he would have been estopped to deny ownership. That estoppel does not prevent the insurer, however, from disclaiming liability; and it may effectively do so where title to an insured automobile has been transferred without its consent, and where the transferor has relinquished control thereof, unless the policy provides for coverage under such circumstances (cf. *Phoenix Ins. Co.* v. *Guthiel,* 2 N Y 2d 584, *supra*).

It is contended that Allstate is liable because of the use of the father's plates, under the law as declared in the *Switzer* case (2 N Y 2d 575, *supra*). There, however, it was held that the insurer was liable because of the precise language of the policy which insured against risks incident to the business practices of automobile dealers.

The circumstances affecting liability in the *Switzer* case are readily distinguishable from those disclosed here, as are the facts in *Abrams* v. *Maryland Cas. Co.* (300 N. Y. 80). In the latter case title to the automobile had passed but the named

insured continued to use it in his business and thus retained an interest in its maintenance and operation which brought him within the coverage of the policy. No similar situation exists here, and it is our opinion that dismissal of the complaint against Allstate was required under the rule announced in *Phoenix Ins. Co.* v. *Guthiel* (2 N Y 2d 584, *supra*).

On Standard's appeal the issue is more restricted. We have already disposed of its contentions with respect to the ownership of the automobile at the time of the accident and its coverage by the Allstate policy. The only other argument which it asserts is that the complaint against it should be dismissed because of late notice of the accident.

The provision for notice is contained in the policy under the " Conditions ", and it is therein provided that in the event of an accident written notice shall be given to the company or any of its authorized agents " as soon as practicable ". Standard argues that this condition was not performed.

On the issue of notice, the learned Trial Justice here said: " With respect to the issue of notice, it is difficult to believe that Standard did not receive timely notice. The Standard insurance agent, who wrote the policy for Carolee Cochrane was a friend of the Cochrane family, and the court does not credit the judgment debtors' testimony that they did not notify Standard until thirty days after the accident. On the contrary, the court believes that Standard was notified immediately. In any event, assuming as fact the testimony of Carolee that she notified Standard thirty days after the accident, the court finds that this was timely notice, considering all of the facts and circumstances in this case, especially in the absence of proof of any prejudice to Standard. The summons and complaint served on the judgment-debtors in March and April of 1957 were promptly forwarded to the defendants. Although invited to answer, the judgment-debtors refused to do so. The plaintiffs' attorney patiently waited until October, 1957, before taking an inquest and entering a judgment on the default of the judgment debtors."

The difficulty is that the rejection of the judgment debtors' testimony that they did not notify Standard until 30 days after the accident, leaves unsupplied any proof that an earlier notice was given. Neither do we find in the record evidence from which it may reasonably be inferred that any notice was given by either of the judgment debtors to Standard until at least a month after the accident. There was evidence by George W. Jervas that he gave notice to Mr. Schade, who presumably transmitted it to Loretta Schade, Standard's agent, about a month or six weeks after the accident; and Miss Cochrane testi-

fied that she first advised Mr. Schade about the accident a little over a month thereafter. Concededly Standard received notice. Arthur Habas, an assistant claims manager for Standard, testified that his company received it from its agent, but he (Habas) did not know when the agent had been informed of the accident. As we read Standard's brief, it is apparently conceded that if the notice given by Miss Cochrane to Mr. Schade a little over a month after the accident was timely, no other notice was necessary.

The rule with respect to the necessity for timely notice is stated as follows in *Deso* v. *London & Lancashire Ind. Co.* (3 N Y 2d 127, 129–130): " It is unquestioned that a failure to satisfy the requirements of this clause by timely written notice vitiates the contract as to both the insured and the plaintiff recovering a judgment against him (*Bazar* v. *Great Amer. Ind. Co.,* 306 N. Y. 481; see *Coleman* v. *New Amsterdam Cas. Co.,* 247 N. Y. 271, 275) and that the term ' as soon as practicable ', like various similar expressions in other liability policies, requires that written notice be given within a reasonable time under all the circumstances (*Vanderbilt* v. *Indemnity Ins. Co. of North America,* 265 App. Div. 495, 496; see 8 Appleman on Insurance Law and Practice, § 4734, p. 105). It is also well settled that the reasonableness of a delay, where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually for the jury (*Rushing* v. *Commercial Cas. Ins. Co.,* 251 N. Y. 302, 304; *Melcher* v. *Ocean Acc. & Guar. Corp.,* 226 N. Y. 51; see, also, *Gluck* v. *London & Lancashire Ind. Co. of America,* 2 A D 2d 751, affd. without opinion 2 N Y 2d 953). On the other hand, absent an excuse or mitigating circumstances, courts have assumed the function of determining fulfillment of the condition. Thus in the *Rushing* case (*supra,* p. 304) Cardozo, Ch. J., stated that as a matter of law, ' In the absence of explanation or excuse, a notice of an accident withheld for twenty-two days is not the immediate notice called for by the policy '. In an earlier case this court, having found no mitigating circumstances, held that a delay of 10 days was unreasonable as a matter of law (*Haas Tobacco Co.* v. *American Fidelity Co.,* 226 N. Y. 343; see, also, *Quinlan* v. *Providence Washington Ins. Co.,* 133 N. Y. 356 [33 days]; *Reina* v. *United States Cas. Co.,* 228 App. Div. 108, affd. 256 N. Y. 537 [26 days]; *Vanderbilt* v. *Indemnity Ins. Co. of North America, supra* [28 days])."

The question to be determined with respect to Standard's appeal, therefore, is whether there are any mitigating circumstances which would excuse failure of the insured to give notice

until about a month after the accident, or which would excuse the injured parties from giving notice sooner than they did (see Insurance Law, § 167). The latter question is not discussed in the briefs.

Concededly there was a delay in giving notice, and in this action the plaintiffs' rights against the insurer are no greater than those of the insured (*Wenig* v. *Glens Falls Ind. Co.*, 294 N. Y. 195); and the burden of excusing the delay is on the plaintiffs (*Rushing* v. *Commercial Cas. Ins. Co.*, 251 N. Y. 302). Delay may be excused when caused by lack of knowledge of facts other than the happening of the accident, or that injury has resulted. It may be excused if there was a justifiable lack of knowledge of the fact that there was insurance coverage (*Gluck* v. *London & Lancashire Ind. Co. of America*, 2 A D 2d 751, affd. 2 N Y 2d 953; *Greaves* v. *Public Serv. Mut. Ins. Co.*, 4 A D 2d 609, affd. 5 N Y 2d 120; *Marcus* v. *London & Lancashire Ind. Co.*, 6 A D 2d 702, affd. 5 N Y 2d 961).

However, we see no extenuating circumstances in the instant case. Both the judgment debtors knew of the transfer of title to the car; and immediately thereafter Miss Cochrane, to her fiancé's knowledge, obtained insurance from Standard. George W. Jervas (the son) testified that he knew of the insurance at the time of the accident and that it covered the automobile. His testimony that they (he and Miss Cochrane) proceeded on the assumption that the father was maintaining the ownership and registration of the automobile until they should register it; that he was told on the telephone that the policy was to be issued and put into effect when they obtained the registration; and that he made his report to Allstate because he did not even think of Standard and believed that they were covered under the Allstate policy, is hardly sufficient to establish an excuse. Although he testified that he did not know whether he had the policy in his possession or not and believed that when the car was registered it would be insured by Standard, and that he did not know whether Miss Cochrane could be the owner until the automobile was registered in her name, he was finally compelled to admit, on questioning by the court, that when he said that the car was transferred to Miss Cochrane by his father he understood what the word "transfer" meant. His negligence in notifying the wrong insurer does not excuse failure to give notice to the proper one (*Reina* v. *United States Cas. Co.*, 228 App. Div. 108, affd. 256 N. Y. 537). No better excuse was shown by Miss Cochrane.

**Delay by the** insured in giving notice of the accident, however, **does not preclude** the injured party from enforcing his rights;

and the standards by which the notice, which will support a claim by the injured party, must be judged, differ from those governing notice in support of a claim by the insured (*Lauritano* v. *American Fire Ins. Co.*, 3 A D 2d 564, affd. 4 N Y 2d 1028; *Marcus* v. *London & Lancashire Ind. Co. of America*, 6 A D 2d 702, *supra*; *Gluck* v. *London & Lancashire Ind. Co. of America*, 2 A D 2d 751, *supra*). Thus, in the *Lauritano* case (p. 568), it was said: "The injured person's rights must be judged by the prospects for giving notice that were afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured. The passage of time does not of itself make delay unreasonable. Promptness is relative and measured by circumstance."

The record establishes that Standard was given notice of the accident other than the notice given by its named insured and the operator of the automobile covered by its policy. The summons and the complaint in the action brought by respondents against George W. Jervas and Miss Cochrane were forwarded to Standard by Allstate on April 22, 1957. The complaint gave adequate notice in writing of the happening of the accident and the circumstances. The record is devoid of proof, however, which would establish lack of knowledge on the part of plaintiffs of the coverage by Standard, and we may not sustain the judgment under review on the theory that insofar as plaintiffs are concerned, notice of the accident was given to Standard as soon as was reasonably possible (see Insurance Law, § 167).

The judgment, insofar as appealed from by plaintiffs, should be affirmed, with costs.

On the appeal by Standard, the judgment, insofar as it is in favor of plaintiffs and against Standard, should be reversed, the action severed as against Standard, and a new trial granted as to Standard, with costs to it to abide the event.

The appeal by Standard from the judgment, insofar as it dismisses the complaint against Allstate, should be dismissed. without costs.

UGHETTA, KLEINFELD, PETTE and BRENNAN, JJ., concur.

In an action by judgment creditors under section 167 of the Insurance Law to recover upon policies of liability insurance issued by the defendants, judgment, insofar as appealed from by plaintiffs, affirmed, with costs to defendant Allstate payable by plaintiffs.

On appeal by defendant Standard, judgment insofar as it is in favor of plaintiffs and against said defendant, reversed, the

action severed, and a new trial granted, with costs to said defendant against plaintiffs to abide the event.

Appeal by defendant Standard from the judgment insofar as it dismisses the complaint against defendant Allstate, dismissed, without costs.