Keating, J.
F. Richard Bornhurst was injured when the automobile he was operating collided with a vehicle operated by one George Daniels. An action was commenced against Daniels and the alleged owner of the vehicle, Edmund Stearns, Catherine Steams and Richard Stearns doing business as Edmund A. Stearns and Son Auto Sales. The plaintiff recovered a verdict against Daniels and “ Stearns ”. The trial court set aside the verdict against “ Stearns ” and dismissed the complaint. The Appellate Division, however, reversed the order dismissing the complaint and ordered a new trial (Bornhurst v. Stearns, 4 A D 2d 818).
Pursuant to section 167 of the Insurance Law, Bornhurst commenced the present action directly against the Massachusetts Bonding & Insurance Company to recover the amount of the judgment against Daniels upon the ground that the defendant, having issued a garage liability policy to “ Stearns ”, had refused to pay the judgment and that, at the time of the accident, ‘ ‘ Stearns ’ ’ was the owner of the vehicle involved in the accident.
After a trial by jury, a verdict was returned in the plaintiff’s favor. The Appellate Division (4th Dept.) reversed on the law and facts and dismissed the complaint with one Justice concurring in reversal but voting for a new trial. The court held that the plaintiff had failed to establish that, at the time of the accident, title to the automobile driven by Daniels had passed to “ Stearns ”.
The issue presented on this appeal is whether the plaintiff established a prima facie case and hence is entitled to a reversal and a new trial.
Former section 99 of the Personal Property Law provided that:
“ 1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.
*584 “ 2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.”
Viewing the evidence most favorably to the plaintiff, we Conclude, as the Appellate Division did in its earlier decision, that ‘‘ the question of [the] ownership of the * * * vehicle was one of fact for the determination of the jury ” and that the complaint was improperly dismissed (Bornhurst v. Stearns, 4 A D 2d 818, supra).
There are essentially two conflicting stories regarding the circumstances surrounding Daniels ’ possession of the Ford vehicle. The defendant’s version—corroborated by testimony of “ Stearns ” and its employee, one Machan—is that during the month of May Daniels had visited “ Stearns ” seeking to purchase a vehicle. An agreement was reached on the purchase of a 1946 Mercury on May 17, and partial financing through Onondaga Provident Loan Association had been arranged. The deal, however, fell through. Several days later, on May 21,1954, Daniels appeared at ‘ ‘ Stearns ’ ’ and decided to purchase a 1941 Cadillac for $195. “ Stearns’ ” employee, Machan, who handled the transaction, testified that he believed the deal would be for cash and a trade-in allowance on the Ford. Daniels then produced a registration certificate for the Ford. “ Stearns’ ” stamp was placed on the back of the registration in that part providing for transfers.
According to Machan’s testimony he believed that Daniels had at least $150 cash since, a few days earlier, Daniels had agreed to put up that amount in cash on the Mercury deal. Upon hearing that the deal was not to be for cash, but would require financing, he stated he would have to call the finance company and would write up an order for the Cadillac subject to approval. He then stated that he gave the registration back to Daniels who left, and the deal was never consummated.[1]
*585 Machan testified he called the finance company about five o’clock after Daniels had left and was advised that the loan was approved. A check for $144—dated May 21, 1954— was received on Monday, May 24, and eventually cashed.
The accident in question occurred shortly after Daniels left ‘ ‘ Stearns ’ ’ in the Ford.
Daniels’ version of the events in question was that he had been at ‘ ‘ Stearns ’ ’ on May 20, and decided to purchase the Cadillac, that, sometime that day or next, he went to the finance company and obtained a check for $144 dated May 21, which was indorsed by him over to “ Stearns ”. He testified that he then gave the registration certificate to Machan or Edmund Stearns who placed his company stamp thereon.[2]
He testified further that he then went out and started the Cadillac and that it had a [1] ‘ knock ’ ’ in it. He was told to leave it there and pick it up the next day, when it would be fixed, and to take the Ford in the meantime and bring it back the next day. The registration was then handed back to him.
There was testimony in the record that it was a general custom in the used car business that title to an automobile passed upon the stamping by the purchaser of registration and the signing by the transferor of his name at the appropriate part of the registration stub.
The foregoing evidence clearly establishes a prima facie case, and, while the testimony of Daniels, who is hardly a respectable character, is contradictory in places and certainly open to question, a dismissal of the complaint is not warranted.
The defendant recognizes that the issue is, in essence, one of credibility. It contends, however, that, even if Daniels’ testimony be accepted as establishing the true facts, the proof herein falls far short of that required to prove a transfer of title to the Ford automobile from Daniels to ‘‘ Stearns ’’.
Initially the defendant argues that ‘‘ the plaintiff is met by a number of presumptions which were not rebutted by the proof in this case ”. The first of these “ presumptions ” is that, since Daniels was shown to have been the owner of the vehicle prior to the date in question, his ownership is presumed to have *586 continued until the contrary is shown (Richardson, Evidence [9th ed., Prince], § 73, p. 50).
This presumption, it is urged, cannot be rebutted by Daniels’ testimony since he is an interested witness.
This argument is without merit. The fact that Daniels may be an interested witness goes only to the issue of credibility. Where the evidence rebutting a presumption “ presents an issue of credibility, it is for the jury to determine whether the rebuttal evidence is to be believed and, consequently, for the jury to determine whether the presumption has been destroyed” (Richardson, Evidence [9th ed., Prince], § 57).
The defendant next argues that ‘ ‘ It has long been the law of this State' that the license number of an automobile, coupled with evidence as to the person who held such license, constitutes prima facie proof that such person was the owner of the vehicle. Ferris v. Sterling, 214 N. Y. 249. Lacking proof that title to a motor vehicle had previously actually been transferred, after it has been involved in an accident and has caused injury, the registered owner must be presumed to have been the owner thereof and will not be permitted to deny such ownership. Elfeld v. Burkham Auto Renting Co., 299 N. Y. 336; Shuba v. Greendonner, 271 N. Y. 189 ”.
Again the defendant’s reliance is misplaced for the plaintiff introduced evidence which, if credited by the jury, would sustain a conclusion that title had in fact passed. Moreover, the rule that after an accident ‘ ‘ the registered owner must be presumed to have been the owner thereof and will not be permitted to deny such ownership ” would apply as a matter of policy only in an- action by an injured party against the record owner — which is not the case here. As we have written: “ To permit the [defendant] to relieve himself of liability by proving that he was not in fact the owner of the automobile and thereby establish his illegal and fraudulent act in procuring its registration in his own name would be against public policy and would encourage fraudulent and illegal deceptions on the State in procuring the registration of automobiles in the names of persons who were not the owners thereof, directly in violation of the statute.” (Shuba v. Greendonner, 271 N. Y. 189, 194.)
In the case at bar Stearns is not the record owner, and there are no policy considerations which prevent the plaintiff *587 from establishing the true ownership of the vehicle. Indeed, there are strong policy considerations which favor a rule permitting an injured party to establish the true ownership of the vehicle. (Vehicle and Traffic Law, § 388.)
The final argument of the defendant rests on an additional fact — not previously noted. It appears, for reasons not here relevant, that, when Daniels originally purchased the Ford, he registered it in the name of a third person (one Earl Pitts) without his consent. In transferring title on the registration, the name of Earl Pitts was signed—either by Daniels or another under his direction. The defendant argues that as a result “ The attempted transfer of title to the Ford from Daniels to Stearns was permeated with fraud and trickery. [And] it has been held that there cannot be a sale of an automobile where such practices are involved. Davis [Damis] v. Barcia, 266 App. Div. 698 (3rd Dept.) ”
It is sufficient to point out that the case on which the defendant relies is not only distinguishable but has since been expressly overruled (Stanton Motor Corp. v. Rosetti, 11 A D 2d 296, 298 [3d Dept.]). The transfer of title from Daniels to “ Stearns ” — assuming it occurred — did not result from any fraud perpetrated upon ‘ ‘ Stearns ’ Daniels was the owner of the vehicle registered in the name of another and he could legally pass title to that vehicle. Indeed, Machan knew Daniels was not Pitts and nevertheless stamped the registration card which was in the name of one Pitts. Moreover, even if another person at Daniels’ request signed the registration, that could not affect the passage of title. In either case, “ Stearns’ ” title could not have been challenged either by Pitts, Daniels or any other party.
To summarize, it seems clear to us that the Appellate Division erred in dismissing the complaint and that the order should be reversed and a new trial granted, with costs to abide the event, on the ground that the plaintiff established a prima facie case.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed and a new trial granted, with costs to abide the event.

. Machan also testified that, since a trade-in was involved, the deal had to be approved by Mr. Edmund Stearns before it could be consummated. This testimony, however, conflicts with Machan’s action in stamping the “ Steams’ ” stamp on the transfer portion of the registration stub. Since Daniels had purchased the Ford from “ Steams ” only a few months earlier for $50 and had discussed a trade-in earlier, the jury could have found that apparently Machan felt secure on going ahead without Mr. Stearns’ approval.

. It is not clear from Daniels’ testimony whether the above-described event took place on May 20 or 21.