OPINION OF THE COURT
Meyer, J.
The execution by the purchaser of a vehicle of a note and purchase agreement, and by both seller and purchaser of a security agreement stating that the vehicle is owned by the purchaser is a sufficient transfer of ownership of the vehicle to constitute the purchaser’s insurance carrier the primary insurer of personal injuries thereafter inflicted during the purchaser’s operation of the vehicle, notwithstanding that the prior owner’s license plates remain on the vehicle and that the certificate of title is not transferred until after the injury-causing accident. The order of the Appellate Division insofar as appealed from should, therefore, be reversed, with costs, and judgment granted in favor of Lumbermens Mutual Insurance Company declaring that Aetna Casualty and Surety Company is solely responsible for defense of the personal injury action and payment of the verdicts therein as compromised.
I
On September 23,1978, Brockway tanker 83050, registered in the name of Dairylea Cooperative, Inc., and carrying license *7 plates issued to it, was involved in an accident with a vehicle operated by Mathias Selthafner in which several of the passengers in the Selthafner vehicle were injured. The tanker was being operated by Robert Rossal who, together with Richard Hendrickson, did business as R & H Hauling. On September 1, 1978, Rossal and Hendrickson had executed to Dairylea a promissory note in the amount of $13,500, an agreement authorizing Dairylea to withhold from any amounts due R&H, as the purchase price of tanker 83050, a stipulated monthly sum until a total of $13,500 plus interest had been retained, and a security agreement in which the tanker was stated to be owned by Rossal and Hendrickson doing business as R & H Hauling and they acknowledged Dairylea’s security interest in it to the extent of $13,500 plus interest. A financing statement was filed with the Sullivan County Clerk on September 21,1978, but the transfer portion of the certificate of title was not executed by Dairylea until February 1, 1979, and transfer to R & H was not made on Department of Motor Vehicle records until April 25, 1979. The purchase agreement and note were signed only by R & H; the security agreement and financing statement were signed by both R&H and Dairylea.
Hendrickson had on May 5, 1978 entered into a tank farm hauling contract with Dairylea and on May 22, 1978, a lease of the Brockway tanker, both of which required him to hold Dairy-lea harmless from any and all claims and to obtain insürance naming Dairylea as an additional insured. It is not disputed that in doing so he was acting on behalf of R & H. On August 1,1978, Aetna Casualty issued to R & H its business automobile policy with liability limit for each occurrence of $750,000, which listed Brockway tanker 83050 as a vehicle owned by R & H and named Dairylea not as an additional insured but as a loss payee. Aetna thereafter furnished Dairylea with two certificates stating that its policy covering the tanker had been issued to R & H, neither of which identified Dairylea’s interest under the policy. At all relevant times Dairylea was insured by Lumbermens Mutual under a comprehensive liability policy which stated, without specification of particular vehicles, that it covered all of Dairy-lea’s vehicles, and the liability limit of which was $500,000 for each occurrence.
In the personal injury action brought by the Selthafners, Rossal, Dairylea and R&H were joined as parties defendant and Dairylea claimed over against R&H. Prior to trial of the personal injury action, each insurer began a declaratory judgment action with respect to coverage. In the personal injury *8 action the jury returned verdicts in behalf of the plaintiffs and the Trial Judge granted Dairylea judgment on its claim over against R & H on both common-law principles and on the basis of its hold harmless agreement.
The verdicts as against Rossal, Dairylea and R & H were thereafter compromised for $315,000, it being stipulated that the settlement was without prejudice to the declaratory judgment actions. Those actions were then consolidated and presented for decision on a stipulation of facts and annexed exhibits. Supreme Court held that notwithstanding transfer of the tanker to R & H, Dairylea remained an owner under section 2-401 (subd [3], par [a]) of the Uniform Commercial Code because no document of title had been delivered, but nonetheless held R & H’s insurer, Aetna, primary because its policy listed the tanker as an owned vehicle. The Appellate Division agreed that under the Uniform Commercial Code Dairylea was an “owner” for purposes of Lumbermens’ policy, but held the “other insurance” clause of the latter policy inapplicable and, therefore, modified the judgment to declare that Lumbermens was also a primary insurer. We conclude that the tanker was an owned vehicle under the Aetna policy, but a nonowned vehicle under the Lumbermens policy, notwithstanding the Vehicle and Traffic Law provisions which Aetna argues impose liability upon both Dairylea and Lumbermens as its insurer and the Uniform Commercial Code provision referred to by the courts below. We therefore reverse.
II
There can be no question that the tanker was at the time of the accident an owned automobile covered by the Aetna policy, for it provided liability insurance for any auto and the annexed “Schedule of Covered Autos You Own” listed Brockway tanker 83050, among others. There also is no question that the Aetna policy protected not only R & H as an insured but Dairylea as well, for its definition of “insured” included the statement that, “Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability.”[1] Nor is it of consequence that the Aetna policy excluded liability assumed under any contract, for Dairylea’s judgment over against R & H is based not only on the hold harmless agreement between them but also on Dairylea’s common-law right to indemnification, *9 which depends not on contract but on the fact that Dairylea has been held vicariously liable, without fault on its part, to the Selthafners, for the negligence of R & H (O’Dowd v American Sur. Co., 3 NY2d 347, 353; Interstate Motor Frgt. System v Michigan Mut. Liab. Co., 87 AD2d 715, mot for lv to app den 57 NY2d 602; Hertz Corp. v Dahill Moving & Stor., 79 AD2d 589, affd 54 NY2d 619; see Rogers v Dorchester Assoc., 32 NY2d 553, 566; 1 NY PJI2d 551).[2] And because the Aetna policy stated that,“For any covered auto you own this policy provides primary insurance,” there can be no question that Aetna’s coverage was primary.
Ill
The situation is, however, different with respect to Lumbermens, whose policy covered no more than the liability of Dairylea and provided no protection at all for Rossal, Hendrickson or R & H Hauling. True, its declaration of coverage listed “all vehicles owned or operated by or for the named insured Dairylea Cooperative, Inc.,” but it is only where the policy by its terms covers the operator as an insured that the insurer of a vehicle’s former owner will be liable to pay a judgment obtained against an operator-transferee after execution of a bill of sale or similar document (General Acc. Fire & Life Assur. Corp. v Piazza, 4 NY2d 659,666; Mason v Allstate Ins. Co., 12 AD2d 138, 144; cf. Nationwide Mut. Ins. Co. v Liberty Mut. Ins. Co., 43 NY2d 810).
By its terms Lumbermens’ policy excluded as an insured “the owner of a non-owned automobile, or any agent or employee of any such owner,” a nonowned automobile being defined as one not owned by the named insured. The sale and security agreements and note which, it is stipulated, were executed 22 days prior to the accident leave no question that at the time of the accident the tanker was not owned by Dairylea within the meaning of the policy, notwithstanding that it still carried plates issued to Dairylea. Furthermore, although the policy definition of “insured” included in addition to Dairylea “any other person while using an owned automobile or a hired automobile with the permission of the named, insured,” the tanker, by reason of the sale and security agreement, was not an owned automobile, nor did the tank farm milk hauling contract, which called for transportation of milk by R & H as an independent contractor rather than use of a particular tanker in the rendi *10 tion of such service, constitute the tanker a hired automobile within the meaning of that provision. Moreover, it cannot be said in any realistic sense that once the September 1, 1978 agreements and note were executed, Dairylea had any control over use of the tanker or could grant R&H permission to use it (Mason v Allstate Ins. Co., supra; see Fidelity & Cas. Co. v Cosmopolitan Mut. Ins. Co., 33 NY2d 966, 967). As the owner of the tanker, R&H had the right to use it without permission from Dairylea or anyone else.
IV
Thus, on the basis of policy language alone, Aetna’s policy covered the September 23, 1978 accident and Lumbermens’ policy did not. The result reached by the Appellate Division can be sustained, therefore, only if required, as Aetna argues, by the Vehicle and Traffic Law, or by the Uniform Commercial Code, as the courts below held.
A
The Vehicle and Traffic Law bases on which it is claimed that the tanker was “owned” by Dairylea at the time of the accident are that it still carried license plates issued to Dairyléa and that the certificate of title had not been signed over to R&H. Neither entitles Aetna to a declaration that Lumbermens is a primary insurer.
A registered owner who transfers a vehicle without removing the license plates is estopped as against an injured third party from denying ownership, but the estoppel does not prevent his insurance carrier from denying ownership within the meaning of its policy as against another carrier (Matter of Allstate Ins. Co. v Gemmell, 55 NY2d 637, 639; Mason v Allstate Ins. Co., 12 AD2d 138, supra; see Bornhurst v Massachusetts Bonding & Ins. Co., 21 NY2d 581; Phoenix Ins. Co. v Guthiel, 2 NY2d 584;Rudes v Hartford Acc. & Ind. Co., 32 AD2d 575, mot for lv to app den 25 NY2d 739; 1 NY PJI2d 569).
Nor does either section 388 or section 2113 of the Vehicle and Traffic Law require a contrary conclusion. Both as a lessee for a period greater than 30 days under the prior lease agreement and as the purchaser under the September 1, 1978 agreements and note, R&H was an owner (Vehicle and Traffic Law, § 128) and “as such, was required to obtain its own insurance coverage and could not rely on” Dairylea’s policy (MVAIC v Continental Nat. Amer. Group Co., 35 NY2d 260, 265). Dairylea’s reservation of a security interest in the September 1, 1978 documents did not *11 affect that result or constitute it an owner (Vehicle and Traffic Law, § 388, subd 3).
Section 2113 of the Vehicle and Traffic Law, although somewhat less clear, does not sustain a different result. Although subdivision (c) states that a transfer is not perfected so as to be valid against third parties generally until the certificate has been indorsed and application for a new certificate together with the required fee has been presented to the Department of Motor Vehicles, it also provides that “an owner who has delivered possession of the vehicle to the transferee and has complied with [those requirements] is not deemed an owner within the provisions of section three hundred eighty-eight of this chapter.” The cross-reference to section 388 of the Vehicle and Traffic Law strongly suggests that the Legislature intended no change by adoption of the section in the rule that the Vehicle and Traffic Law’s provisions not inure to the benefit of an insurer.
The section is part of title X of the Vehicle and Traffic Law, which is the Uniform Vehicle Certificate of Title Act (§ 2134). Under its definition of “owner” (§ 2101, subd [g]), R & H as “a person entitled to the use and possession of a vehicle subject to a security interest in another person” is an owner and Dairylea, as a “lienholder,” is not. Moreover, the Act does not foreclose Dairylea’s showing title to be in R & H, for it only constitutes, “A certificate of title * * * prima facie evidence of the facts appearing on it” (§ 2108, subd [c]), and doing so is not inconsistent with the purpose of the Uniform Act which is “[t]o furnish convenient evidence of vehicle ownership” (11 ULA [Master ed], p 421, Commissioners’ Prefatory Note; accord Atwood Chevrolet-Olds. v Aberdeen Mun. School Dist., 431 So 2d 926, 928 [Miss]).
Finally, and most importantly, the Act is to “be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it” (§ 2133), and the courts of most States that have considered the question have reached the same conclusion as do we. Thus, the proviso to subdivision (c) of section 2113 has been held to go “only to when a previous owner is no longer liable and does not purport to define when a previous owner remains the owner for purposes of . insurance coverage” (Country Mut. Ins. v Aetna Life & Cas. Ins. Co., 69 Ill App 3d 764, 767; accord Bacheller v Employer Mut. Liab. Ins. Co., 93 Wis 2d 564), and to be inapplicable between carriers because, “It does not appear that the rights of third-party insurance carriers were intended to be governed by this statute” (Lynch v United States Branch, Gen. Acc. Fire & Life Assur. Corp., 327 F2d 328, 332). The section has likewise been *12 held not to defer vesting of title in a purchaser until the Act has been complied with (Galemore v Mid-West Nat. Fire & Cas. Ins. Co., 443 SW2d 194, 198 [Mo]; National Exch. Bank v Mann, 81 Wis 2d 352; Southern Fire & Cas. Co. v Teal, 287 F Supp 617, affd on opn below 406 F2d 1330; cf. New Jersey Mfrs. Ins. Co. v Keystone Ins. Co., 112 NJ Super 585; see Congress Fin. Corp. v Funderburk, 416 So 2d 1059,1062 [Ala]). There are cases contra (Fireman’s Fund Ins. Cos. v Blais, 14 Mass App 254, cert den 440 NE2d 1177; Nationwide Mut. Ins. Co. v Hayes, 276 NC 620) but, for the reasons set forth above, we decline to follow them.
B
The courts below held Dairylea to be an owner under the Lumbermens policy by reason of section 2-401 (subd [3], par [a]) of the Uniform Commercial Code. To the extent that the Uniform Commercial Code has any bearing on the obligations of insurance carriers, however, we conclude that, for several reasons, section 2-401 (subd [3], par [a])[3] is inapplicable and that title passed to R & H on September 1,1978 under subdivision (2) of that section.
First, even if subdivision (3) were deemed applicable, the certificate of title to the tanker was not a “document of title” within its meaning. “Document of title” is defined in subdivision 15 of section 1-201 of the Uniform Commercial Code, which is made applicable to article 2 by subdivision 4 of section 2-103 of that Code. That definition is as follows: “ ‘Document of title’ includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee’s possession which are either identified or are fungible portions of an identified mass.” In light of the last sentence, there can be no question that the certificate of title provided for in article 46 of the Vehicle and Traffic Law, although a title document in a broad sense is not a document of title within the meaning of section 2-401 (subd [3], par [a]) of the Uniform Commercial Code (see Matter of Emergency Beacon *13 Corp., 665 F2d 36, 41; National Exch. Bank v Mann, 81 Wis 2d 352, supra; Draper Bank & Trust Co. v Lawson, 675 P2d 1174 [Utah]; Medico Leasing Co. v Smith, 457 P2d 548 [Okla]).
Second, subdivision (3) applies, however, only “where delivery is to be made without moving the goods,” and Official Comment 4 makes clear that the quoted phrase refers to goods which remain in the seller’s possession — “subsections (2) and (3) * * * actually base the test upon the time when the seller has finally committed himself in regard to specific goods * * * If shipment is not contemplated subsection (3) turns on the seller’s final commitment, i.e. the delivery of documents or the making of the contract.” Here, the specific property was in the possession of R&H when the September 1, 1978 papers were executed and the seller had on that date by acknowledging R & H’s ownership of the tanker committed itself as to the specific goods being sold.
While subdivision (3) of section 2-401 of the Uniform Commercial Code does not apply under the circumstances of the present case, subdivision (2) of that section does. That subdivision provides: “Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place”. The tanker being in possession of R & H when the agreements and note were signed, title passed to R & H, therefore, at the time those documents were executed (Motors Ins. Corp. v Safeco Ins. Co.„ 412 SW2d 584 [Ky]; Galemore v Mid-West Nat. Fire & Cas. Ins. Co., 443 SW2d 194 [Mo], supra; Knotts v Safeco Ins. Co., 78 NM 395; Nationwide Mut. Ins. Co. v Hayes, 276 NC 620, supra; see Fulater v Palmer’s Granite Garage, 90 AD2d 685, app dsmd 58 NY2d 826; Blackmer v Travelers Ind. Co., 110 Misc 2d 704, 708-709; New Jersey Mfrs. Ins. Co. v Keystone Ins. Co., 112 NJ Super 585, supra; contra Fireman’s Fund Ins. Cos. v Blais, 14 Mass App 254, cert den 440 NE2d 1177, supra).
V
The order of the Appellate Division having been based upon an erroneous view of the applicability of the Uniform Commercial Code and of the significance of the “other insurance” provision of the Lumbermens policy, and there being no question under the facts as stipulated that the Lumbermens policy provided no coverage of R & H as to the September 23, 1978 accident, the order of the Appellate Division insofar as appealed from should be reversed, with costs, and judgment granted in favor of Lumbermens Mutual Insurance Company declaring *14 that Aetna Casualty and Surety Company is solely responsible for defense of the personal injury action and payment of the verdicts therein as compromised.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Order insofar as appealed from reversed, with costs, and judgment granted in favor of appellant in accordance with the opinion herein.

, Excepted from the quoted provision was a hired or borrowed auto, other than a trailer connected to a covered auto, but at the time of the accident the tanker was no longer under lease to R & H, they having purchased it by the September 1, 1978 agreement, note and security agreement.

. In view of the conclusion hereafter reached we need not consider whether R & H’s obligation to indemnify Dairylea imposes any additional obligation upon Aetna.

. The provision reads as follows: “Unless explicitly agreed where delivery is to be made without moving the goods, (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents”.