930 F.2d 258
 The INTEGRAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
LAWRENCE FULBRIGHT TRUCKING, INC.; Charles S. Klutz;
A.L.C. Transportation, Inc.; Valley
Transportation of Vale, Inc.; Kathleen
McGoldrick; Patricia
McGoldrick,
Defendants-
Appellees.
 No. 1142, Docket 90-9022.
 United States Court of Appeals,
Second Circuit.
 Argued March 6, 1991.
Decided April 15, 1991.
 
 Edward Farman, New York City (Laurence J. Rabinovich, Schindel, Cooper & Farman, New York City, of counsel), for plaintiff-appellant.
 Michael G. Glass, Melville, N.Y. (Robert A. Katz, Gandin, Schotsky & Rappaport, P.C., Melville, N.Y., of counsel), for defendants-appellees Kathleen and Patricia McGoldrick.
 Before KEARSE, PRATT and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Plaintiff-appellant The Integral Insurance Company ("Integral") appeals from a judgment entered upon cross-motions for summary judgment declaring that it is obligated to indemnify pursuant to an MCS-90 endorsement included in a trucker's policy issued to defendant Lawrence Fulbright Trucking, Inc. ("Fulbright"). The MCS-90 endorsement, which is mandated by Sec. 29 of the Motor Carrier Act of 1980, 49 U.S.C. Sec. 10927 ("MCA"), requires the insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles." The district court found that (a) Fulbright was "using" the motor vehicle when the accident occurred and (b) even if Fulbright was not "using" the vehicle, it remained the owner thereof and, as such, was covered by the Integral policy. We agree with the second ground and accordingly affirm.
 
 BACKGROUND
 
 2
 On July 29, 1988, Kathleen McGoldrick was seriously injured in New York when her car was hit from behind by a tractor-trailer. Kathleen McGoldrick and Patricia McGoldrick, whose relationship to Kathleen is not disclosed in the record, sued in the Supreme Court of the State of New York, County of New York (the "state court action"). Among the defendants were (1) Charles S. Klutz, who owned the tractor portion of the tractor-trailer and who was driving the tractor-trailer, (2) Fulbright, the owner of the trailer portion of the tractor-trailer, (3) A.L.C. Transportation, Inc. ("A.L.C."), a motor carrier, and (4) Valley Transportation of Vale, Inc. ("Valley"), A.L.C.'s agent, which pursuant to a lease agreement more fully described below, had leased Klutz's tractor. The state court action was later settled for $1.94 million upon the understanding that Integral would contribute an additional $750,000 if a court should eventually hold that it was obligated to indemnify Fulbright, its insured.
 
 
 3
 Although Klutz owned the tractor portion of the tractor-trailer, he did not have an Interstate Commerce Commission ("ICC") license to carry goods in interstate commerce. A.L.C., however, had such a license. To circumvent ICC regulations, Klutz leased the tractor to A.L.C., which in turn, designated Klutz as the authorized driver of the tractor and had him insured under A.L.C.'s policy. Klutz paid A.L.C. $500 per month for this arrangement, but he did not receive compensation from A.L.C. and never hauled freight for A.L.C.
 
 
 4
 The legal status of the trailer portion of the tractor-trailer is only slightly more obscure. In February 1988, Fulbright agreed to sell the trailer to Klutz, who took immediate possession of the trailer. Although Klutz was to pay Fulbright $400 per month until the full purchase price of $8,000 was paid, Fulbright retained registration of, title to and the license plates for the trailer. Because Klutz had not paid the full purchase price to Fulbright on the day of the accident, the parties have stipulated that on July 29, 1988, Fulbright was still the owner of the trailer. Shortly after the accident, Klutz returned the trailer to Fulbright.
 
 
 5
 A trucker's policy issued by Integral to Fulbright, the trailer owner, was in effect on the day of the accident. The policy provided coverage only for scheduled vehicles, but the trailer was not included on the schedule. The policy, however, also included an MCS-90 endorsement, which extends the insurance coverage to all motor vehicles owned by Fulbright, regardless of whether the vehicle is listed on the schedule. The MCS-90 endorsement obligates Integral to pay
 
 
 6
 within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980.
 
 
 7
 The MCS-90 endorsement derives from the financial responsibility regulations promulgated by the Secretary of Transportation (the "Secretary") pursuant to the MCA. See 49 C.F.R. Sec. 387.15 (Illustration I) (1990). The regulations require motor carriers to obtain minimum levels of security, in the form of either insurance or a surety bond, to protect the public. Id. Sec. 387.7. At the time of the accident, the minimum level established by the Secretary was $750,000. See id. Sec. 387.9. The financial responsibility requirement is satisfied by the inclusion of Form MCS-90 as an endorsement to the motor carrier's insurance policy or a surety bond as approved in Form MCS-82. See id. Sec. 387.15. It was pursuant to these regulations that Integral issued to Fulbright the MCS-90 endorsement that is in controversy here.
 
 
 8
 After the settlement agreement in the state court action, Integral commenced this action in the district court against Fulbright, Klutz, Valley, A.L.C. and the McGoldricks, seeking a declaration that it is not obligated to indemnify Fulbright under the MCS-90 endorsement it issued to Fulbright. The McGoldricks and Integral cross-moved for summary judgment on stipulated facts.[1] The district court accepted the McGoldricks' interpretation of the MCS-90 endorsement in two critical respects. First, the district court agreed that Fulbright was "using" the trailer at the time of the accident, even though Klutz was operating the trailer and even though it was stipulated that Fulbright exercised no control over the trailer once Klutz took possession. The district court found in the alternative that even if Fulbright had not been "using" the trailer, Integral would still be liable under the policy because the MCS-90 endorsement does not require the insured's own "operation, maintenance or use." Thus, it found Integral liable to pay any "final judgment" against Fulbright. We agree with the alternative holding and accordingly affirm on that ground.
 
 DISCUSSION
 
 9
 It is important to note at the outset that there is no evidence or, indeed, even an allegation that Fulbright itself was negligent. Its liability, if any, is a status liability, i.e., as owner of the trailer that was negligently operated by another: Mr. Klutz. The McGoldricks' principal argument is that the plain meaning of the language employed in the MCS-90 endorsement is that the insurer must indemnify even where the insured or one of its agents is not actively negligent. We agree.
 
 
 10
 The plain meaning of the endorsement requires only (1) a final judgment against the insured which (2) arises out of the negligent operation, maintenance or use of the motor vehicle. Had the Secretary intended the judgment to be founded only upon the insured's own active negligence, the endorsement would read "any final judgment recovered against the insured for public liability resulting from the insured's negligence in the operation, maintenance or use of motor vehicles." Accord United States v. Hescorp, Heavy Equipment Sales Corp., 801 F.2d 70, 75 (2d Cir.) (rejecting interpretation of regulation inconsistent with its plain meaning), cert. denied, 479 U.S. 1018, 107 S.Ct. 672, 93 L.Ed.2d 723 (1986).
 
 
 11
 The statute from which the endorsement derives is not to the contrary, and it illuminates our analysis. Section 29 of the MCA provides that
 
 
 12
 [t]he security must be sufficient to pay ... for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles.
 
 
 13
 49 U.S.C. Sec. 10927(a)(1). The language of both the statute and the implementing endorsement thus reflect an intention to furnish indemnification even where the insured carrier is adjudged only vicariously liable for the negligence of another.
 
 
 14
 This view is fully consistent with the purpose of the MCA and the regulations promulgated pursuant thereto, which were designed to stem the unregulated use of non-owned vehicles that threatened both public safety and the vitality of the trucking industry. See Empire Fire and Marine Ins. Co. v. Guaranty Nat'l Ins. Co., 868 F.2d 357, 362 (10th Cir.1989).
 
 
 15
 In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. [American Trucking Ass'ns v. United States, 344 U.S. 298, 305, 73 S.Ct. 307, 312, 97 L.Ed. 337 (1953) ]. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles. See, e.g., Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473, 477 (3d Cir.1961).
 
 
 16
 Id.
 
 
 17
 The preamble to the regulations promulgated pursuant to the MCA, which may also be examined to divine their meaning, see Vermont v. Thomas, 850 F.2d 99, 103 (2d Cir.1988), supports our construction. The preamble to Sec. 387 states that
 
 
 18
 [t]he purpose of these regulations is to create additional incentives to motor carriers to maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways.
 
 
 19
 49 C.F.R. Sec. 387.1.
 
 
 20
 The goal of ensuring a monetary recovery by an injured party against a motor carrier would be thwarted if the insurer had to indemnify accident victims only where the insured carrier was itself actively negligent, the interpretation of the MCS-90 endorsement advanced by Integral. It is only sheer happenstance in this case that the tractor and the trailer were owned by different parties, enabling the McGoldricks to look both to A.L.C.'s insurance carrier and to Integral, as Fulbright's insurer, to recover for their injuries. If, for example, Fulbright had owned both the tractor and the trailer and had entered into the same agreement with Klutz (i.e. relinquishing possession and control but retaining title and registration), the McGoldricks, under Integral's interpretation, would have no source of recovery from a motor carrier. This result cannot be countenanced.
 
 
 21
 Integral argues that its interpretation of the MCS-90 endorsement is consistent with a line of New York cases, see, e.g., Dairylea Cooperative, Inc. v. Rossal, 64 N.Y.2d 1, 483 N.Y.S.2d 1001, 473 N.E.2d 251 (1984); Phoenix Ins. Co. v. Guthiel, 2 N.Y.2d 584, 161 N.Y.S.2d 874, 141 N.E.2d 909 (1957); Mason v. Allstate Ins. Co., 12 A.D.2d 138, 209 N.Y.S.2d 104 (2d Dep't 1960), interpreting the language "ownership, maintenance or use" in standard automobile insurance policies to mean ownership, maintenance or use only by the insured or one of its agents. All three cases, however, dealt with situations where actual ownership to the vehicles had been transferred by the seller or donor whose insurer, therefore was no longer obligated to provide liability coverage. See Dairylea, 64 N.Y.2d at 9, 483 N.Y.S.2d at 1004, 473 N.E.2d at 254; Phoenix, 2 N.Y.2d at 590, 161 N.Y.S.2d at 879-80, 141 N.E.2d at 912-13; Mason, 12 A.D.2d at 142, 209 N.Y.S.2d at 111. Here, in stark contrast, the parties stipulate that Fulbright, the insured, owned the trailer at the time of the accident. Under these circumstances, the insurer must indemnify. See Ronconi Data Services, Inc. v. Travelers Indemnity Co., 67 A.D.2d 703, 704, 412 N.Y.S.2d 411, 412 (2d Dep't), aff'd, 48 N.Y.2d 736, 422 N.Y.S.2d 665, 397 N.E.2d 1332 (1979); Nationwide Mutual Ins. Co. v. Liberty Mutual Ins. Co., 55 A.D.2d 527, 527, 389 N.Y.S.2d 546, 546 (1st Dep't 1976), aff'd, 43 N.Y.2d 810, 402 N.Y.S.2d 395, 373 N.E.2d 290 (1977); Hartford Accident and Indemnity Co. v. Smith, 54 A.D.2d 958, 958, 388 N.Y.S.2d 641, 641 (2d Dep't 1976), aff'd, 43 N.Y.2d 808, 402 N.Y.S.2d 395, 373 N.E.2d 289 (1977).
 
 
 22
 We therefore hold that when a judgment is entered against the owner of a motor vehicle insured under an MCS-90 endorsement, the insurer is obligated to indemnify, even when the judgment is based on a theory of vicarious liability.
 
 CONCLUSION
 
 23
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The only other party to appear in the district court action was Fulbright. It did not move for summary judgment