**STATE OF VERMONT, Conservation Law Foundation of New England, Inc., and Vermont Natural Resources Council, Petitioners,**

v.

**Lee THOMAS, Administrator, United States Environmental Protection Agency and the United States Environmental Protection Agency, Respondents,**

and

**Alabama Power Company, et al., Intervenors.**

**No. 872, Docket 87–4119.**

United States Court of Appeals, Second Circuit.

Argued March 7, 1988.

Decided June 23, 1988.

J. Wallace Malley, Jr., Asst. Atty. Gen., Montpelier, Vt. (Jeffrey L. Amestoy, Atty. Gen., State of Vt., Armond Cohen, Diane A. Schachter, Conservation Law Foundation of New England, Boston, Mass., of counsel), for petitioners.

Gregory B. Foote, Office of General Counsel, U.S. Environmental Protection Agency, Washington, D.C. (Roger J. Marzuella, Acting Asst. Atty. Gen., Arthur E. Gowran, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., of counsel), for respondents.

Henry V. Nickel, Washington, D.C. (Michael L. Teague, Norman W. Fichthorn, Hunton & Williams, Washington, D.C., of counsel), for intervenors.

Before MESKILL and ALTIMARI, Circuit Judges, and MISHLER, District Judge.*

ALTIMARI, Circuit Judge:

Petitioners, the State of Vermont, Conservation Law Foundation of New England, Inc., and Vermont Natural Resources Council, seek review, pursuant to 42 U.S.C. § 7607(b)(1), of a final ruling of respondent, the Environmental Protection Agency ("EPA"), taking "no action" on those portions of Vermont's state implementation plan ("state implementation plan" or "SIP") addressing "regional haze" submitted under section 169A of the Clean Air Act of 1970, as amended (the "Clean Air Act" or the "Act"), 42 U.S.C. § 7491 (1982). Because we agree with respondent Lee Thomas, Administrator of the EPA (the "Administrator"), that current regulations do not encompass federally enforceable measures to alleviate "regional haze," we deny the petition for review.

## BACKGROUND

Congress enacted the Clean Air Act to address the increasingly grave threat of air pollution to the environment, public health and the general welfare of the nation. 42 U.S.C. § 7401 (1982). The Act directs EPA to prescribe national "ambient air quality standards" and requires states to ensure that the national standards are complied with by adopting implementation plans. Id. §§ 7409–10. The statutory scheme establishes shared state and federal responsibility for achieving a cleaner and safer environment by providing for federal coordination of regional air pollution control measures implemented by the states. Id. § 7401(a)(3), (4). To ensure that the various state implementation plans meet the requirements of the Act and EPA regulations, EPA is empowered to approve or disapprove SIPs and any subsequent revisions thereto. Id. § 7410.

At issue in this case are the 1977 amendments to the Act which directed EPA, in pertinent part, to adopt regulations protecting visibility in certain national parklands and wilderness areas, designated as "class I Federal areas." Clean Air Act § 169A, 42 U.S.C. § 7491; see id. § 162(a), 42 U.S.C. § 7472(a) (defining class I areas to include international parks, national wilderness areas exceeding 5,000 acres, national memorial parks exceeding 5,000 acres, and national parks exceeding 6,000 acres). Class I areas were singled out by Congress as requiring special protection in view of the aesthetic importance of visibility to the continued enjoyment and preservation of the country's scenic vistas. Accordingly, Congress set as a "national goal the prevention of any future, and the remedying of any existing, impairment of visibility ... result[ing] from man-made air pollution" in class I areas, id. § 7491(a)(1), and directed

---

* The Honorable Jacob Mishler, *Senior Judge,* United States District Court for the Eastern District of New York, sitting by designation.

EPA to provide guidelines for the states in order "to assure ... reasonable progress toward meeting the national goal" of visibility enhancement in those areas. *Id.* § 7491(a)(4), (b).

Pursuant to its authority under section 169A of the Act, EPA promulgated regulations in 1980 designed to "establish long-range goals, a planning process, and implementation procedures" toward achieving the national visibility goal. 45 Fed.Reg. 80,084 (codified at 40 C.F.R. § 51.300 *et seq.*). Specifically, EPA determined that visibility impairment is of two types: 1) "plume blight," *i.e.*, traceable streams of smoke, dust or colored gas emanating from single sources or small groups of sources; and 2) "regional haze," *i.e.*, widespread, homogeneous haze from a multitude of sources which impairs visibility in large areas, often for hundreds of miles from the sources of the pollution. Of the two types of air pollution, EPA recognized that plume blight obviously was more susceptible to identification, measurement and thus control. The more vexing problem of how to alleviate regional haze was, in EPA's view, subject to certain scientific and technical limitations. Consequently, the 1980 regulations adopted a "phased approach to visibility protection." *Id.* at 80,085. Under "Phase I" of the program, EPA regulations targeted plume blight while deferring for "future phases" the complexities of regional haze and urban plumes. *Id.* at 80,085–86. "Phase II" would address regional haze once monitoring and other scientific techniques progressed to a point that EPA could develop a regulatory program for that type of impairment. *Id.* at 80,087.

The effect of the 1980 regulations was to require the 36 states containing class I areas to revise their SIPs to implement a visibility protection program, consistent with the new regulations, to assure reasonable progress toward section 169A's national visibility goal. The regulations mandated that each of the affected states' SIPs contain, *inter alia*, a "long-term (10–15 years) strategy" to combat visibility impairment in each class I area. 40 C.F.R. § 51.306(a) (1987).

In April 1986, Vermont submitted to EPA its proposed plan addressing visibility impairment at the Lye Brook National Wilderness Area, a 12,000 acre mountain plateau in the southern portion of the Green Mountain National Forest and the state's only class I area. As indicated in Vermont's 300–page SIP, the Lye Brook area is afflicted with summertime haze that has drastically reduced visibility by as much as 40 percent since the mid 1950s. The Vermont plan contained extensive technical analysis demonstrating that Lye Brook's visibility impairment is due primarily to sulfur dioxide pollution originating from out-of-state sources, *e.g.*, power plants and coal and oil company factories. Vermont found that sulfate particle emissions from a multitude of sources located in 8 upwind states—Ohio, Pennsylvania, West Virginia, Kentucky, Tennessee, Illinois, Indiana, and Michigan—were principally responsible for the haze blanketing Lye Brook during the summer months.

Vermont's SIP concluded that while adequate in-state measures to prevent plume blight were already in place, a reduction program aimed at out-of-state sulfate emissions would be necessary to assure reasonable progress toward the national visibility goal. Consequently, Vermont proposed a federally enforceable "long-term strategy" to combat the effects of regional haze at Lye Brook. The long-term strategy included a summertime ambient sulfate standard and a 48–state emissions reduction plan in order to meet the air quality standard by 1995. In addition, Vermont asked EPA to disapprove and revise the SIPs of the eight upwind states which were the major contributors to visibility impairment at Lye Brook, *see* Clean Air Act § 110(c)(1)(B), 42 U.S.C. § 7410(c)(1)(B) ("[t]he Administrator shall ... set[ ] forth an implementation plan ... for a State if ... the plan ... submitted for such State is determined by the Administrator not to be in accordance with the requirements of this section"), and also asked that four of these states not containing class I areas (Ohio, Illinois, Indiana, and Pennsylvania) be added to the list of 36 states required to submit visibility plans.

In December 1986, EPA issued a proposed ruling on Vermont's SIP. 51 Fed. Reg. 43,389. EPA agreed with Vermont's assessment that visibility impairment at Lye Brook is due predominantly to regional haze caused by out-of-state sulfur dioxide emissions. *Id.* at 43,391. Nevertheless, EPA proposed taking "no action" on those portions of Vermont's SIP addressing regional haze "because EPA has yet to establish requirements for strategies relating to regional haze." *Id.* at 43,392. EPA objected to Vermont's program as dictating a single solution to a national problem without the benefit of EPA regulations implementing a Phase II regional haze program.

In July 1987, EPA issued its final ruling on Vermont's proposal. 52 Fed.Reg. 26,-973. While EPA approved limited portions of Vermont's SIP complying with existing plume blight regulations under section 169A of the Act, EPA decided to take "no action" on those parts of the SIP aimed at controlling regional haze. EPA also denied Vermont's request to disapprove the SIPs of the eight upwind states as well as its request to add four states to the list of states required to submit visibility protection plans for class I areas. In explaining its "no action" ruling, EPA concluded that Vermont's proposal establishing an ambient sulfate standard and its long-term strategy for emissions reduction throughout the continental United States were outside the scope of EPA's existing regulations. EPA viewed as federally enforceable only those portions of a state implementation plan submitted in response to regulations promulgated by the agency. According to EPA, Vermont's regional haze measures could not become federal rules "until such time as EPA decides to promulgate a national regional haze program." *Id.* at 26,974.

Petitioners thereupon filed a petition for review of EPA's "final rule" pursuant to 42 U.S.C. § 7607(b)(1). We permitted the Alabama Power Company, *et al.* to intervene as respondents.

## DISCUSSION

Petitioners argue that EPA's refusal to approve Vermont's SIP in its entirety violates both EPA's own regulations and the Clean Air Act, and accordingly seek reversal of EPA's ruling as an administrative action "not in accordance with law." 42 U.S.C. § 7607(d)(9)(A); 5 U.S.C. § 706(2)(A); *see Connecticut v. EPA,* 696 F.2d 147, 155 (2d Cir.1982); *Friends of the Earth v. EPA,* 499 F.2d 1118, 1123 (2d Cir.1974). Specifically, petitioners contend that the 1980 regulations encompass measures to alleviate regional haze and that EPA's contrary interpretation of its regulations is inconsistent with the terms and the underlying purposes of the Clean Air Act. For the reasons that follow, we disagree.

\*    \*    \*    \*    \*    \*

■■■ Our inquiry into determining whether the Administrator's action in this case was "in accordance with law" is a limited one. *See Kennecott Corp. v. EPA,* 684 F.2d 1007, 1013 (D.C.Cir.1982). "Although this inquiry . . . is to be searching and careful, . . . [a] court is not empowered to substitute its judgment for that of the agency." *Friends of the Earth,* 499 F.2d at 1123 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)). Indeed, in view of the EPA's responsibility to administer the Clean Air Act, we must give great deference to the Administrator's interpretation of the statute. *EPA v. National Crushed Stone Ass'n,* 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). And, when the Administrator's interpretation of his own regulations is at issue, "deference is even more clearly in order." *Udall,* 380 U.S. at 16, 85 S.Ct. at 801. Consequently, unless petitioners can demonstrate that EPA's action was plainly unreasonable, we cannot disturb its ruling. *See Connecticut v. EPA,* 696 F.2d at 155.

We begin with the statute itself. Section 169A of the Clean Air Act directs EPA to promulgate regulations requiring states containing class I areas to adopt through their SIPs long-term strategies assuring reasonable progress toward meeting the national visibility goal. 42 U.S.C.

§ 7491(b). Pursuant to this legislative mandate, in 1980 EPA issued regulations providing that each SIP include a long-term strategy designed to remedy any existing, and prevent any future, impairment of visibility in class I areas. 40 C.F.R. § 51.306(a) (1987).

Vermont claims that its long-term strategy addressing regional haze fits within the purview of the 1980 regulations and must be approved by EPA. *See* Clean Air Act § 110(a)(2)(J), 42 U.S.C. § 7410(a)(2)(J) ("Administrator shall approve [the SIP] ... if he determines that ... it meets the requirements" of, *inter alia*, section 169A). The Administrator responds by arguing that the 1980 regulations do not cover regional haze impairment and that measures addressing that type of impairment are not *required* by section 169A and therefore cannot be part of a federally enforceable SIP. *See id.* § 110(d), § 7410(d) (federally enforceable SIP is one which "implements the *requirements*" of the statute) (emphasis added).

In support of its interpretation of the 1980 regulations, EPA cites the preamble to the final regulations in which EPA explained its adoption of a "phased approach" to visibility protection in class I areas. The preamble indicates that "Phase I" of the program "[r]equire[s] control of impairment that can be traced to a single existing stationary facility or small group of ... facilities" while "[f]uture phases will ... address[ ] more complex problems such as regional haze and urban plumes." 45 Fed. Reg. 80,085–86. Although petitioners concede that action on regional haze was deferred for future phases of the visibility program, they nonetheless argue that the 1980 regulations were intended to allow, as technologies improved, for the evolution of long-term strategies combating regional haze. We disagree.

■ It is one thing to recognize that the regulatory mechanism put into place by the 1980 regulations *anticipated* long-term strategies designed to alleviate regional haze, *see* 45 Fed.Reg. 34,764 ("[e]ven though we are calling these ... regulations 'Phase I of the visibility protection pro-gram,' the basic structure ... will remain constant for *all* phases"); it is quite another to suggest that the 1980 regulations actually *authorized* states containing class I areas to implement regional haze measures through federally enforceable SIPs. Petitioners would have us ignore the preamble language in favor of the "plain meaning" of the regulations. *But see New York State Comm'n on Cable Tel. v. FCC*, 571 F.2d 95, 98 (2d Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978) ("[m]ere incantation of the plain meaning rule, without placing the language to be construed in its proper framework, cannot substitute for a meaningful analysis"). Respondents correctly note, however, that no "plain meaning" to regulate regional haze can be discerned from the face of the regulations. Consequently, having looked to the preamble to determine the scope of the 1980 regulations, *see Wiggins Bros., Inc. v. Dep't of Energy*, 667 F.2d 77, 88 (Temp.Emer.Ct.App.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982) ("preamble to a regulation ... should be considered in construing ... and determining the meaning of the regulation"), we find that EPA intended to limit the regulations to plume blight.

Petitioners also contend that even in the absence of EPA regulatory "guidelines" addressing regional haze, Clean Air Act § 169A(b)(1), 42 U.S.C. § 7491(b)(1), the Act imposes upon states an independent duty to develop visibility protection standards to assure "reasonable progress" toward achieving the national visibility goal. While it is certainly true that the actual implementation of visibility protection measures is the responsibility of the states, the statute and its legislative history make clear that Congress charged EPA with the responsibility through its rulemaking power to ensure attainment of the national goal. *Id.* § 169A(a)(4), § 7491(a)(4); H.R. Rep. No. 294, 95th Cong., 1st Sess. 206, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1077, 1285. Without EPA rulemaking on regional haze, therefore, Vermont's proposed interstate measures are outside the scope of the regulations and

thus are not subject to federal enforcement under the Act.

Since Vermont's regional haze measures were not required to be included in its SIP, we believe that EPA's "no action" response was appropriate. Petitioners maintain, however, that EPA's "no action" ruling deprives Vermont of a definitive decision on the merits of its proposal and violates section 110 of the Act. *See* 42 U.S.C. § 7410(a)(2) (Administrator "shall ... approve or disapprove" proposed SIP). We have held previously that the Clean Air Act should not be read to permit only outright approval or disapproval of state plans so long as EPA's action was reasonable. *Connecticut Fund for the Environment, Inc. v. EPA*, 672 F.2d 998, 1006–07 (2d Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982). In this case, the effect of EPA's ruling was to "keep [Vermont's] measures out of the Federally enforceable SIP." 52 Fed.Reg. 26,976 (1987). EPA explained its action in this regard as an attempt to "avoid the appearance of a premature judgment as to [the measures'] ultimate approvability, and [to] prevent confusion regarding their present enforceability as a matter of state law." *Id.* Given that Vermont was free to adopt within its borders air quality standards more stringent than federal law requires, 42 U.S.C. § 7416, it is evident that EPA's "no action" ruling—as opposed to outright rejection of Vermont's regional haze measures—was more than reasonable.

We recognize, of course, that without federal enforcement of Vermont's plan, little, if any, progress will be made on regional haze at Lye Brook. While this is indeed lamentable, until such time as a federal regional haze program is in place, Vermont may not impose its standards on upwind states. *See Air Pollution Control Dist. v. EPA*, 739 F.2d 1071, 1087–88 (6th Cir.1984) (downwind state's air quality standards that are more stringent than national standards do not require upwind state to alter its otherwise valid SIP); *Connecticut v. EPA*, 656 F.2d 902, 909 (2d Cir.1981) (same); *see also* Clean Air Act § 110(a)(2)(E)(i), 42 U.S.C. § 7410(a)(2)(E)(i). Consequently, we find that EPA's denial of

Vermont's request to disapprove the SIPs of the eight upwind states contributing to visibility impairment at Lye Brook was in accordance with federal law, *see* Clean Air Act § 110(c)(1)(B), 42 U.S.C. § 7410(c)(1)(B) (providing that EPA may revise SIP if it is not in compliance with requirements of the Act), and likewise that EPA's refusal to add four regional haze producing states to those now required to develop class I visibility protection programs was reasonable in view of the limited scope of the 1980 regulations.

■ Finally, we note that, more than ten years after the enactment of section 169A, there still is no national program addressing regional haze. We are sympathetic to petitioners' argument that something must be done soon. EPA's assurances of future action on regional haze are little comfort to Vermont and visitors to Lye Brook. We can only hope that EPA will act quickly in furtherance of the national visibility goal. In the meantime, Vermont can pursue an alternative remedy, namely, the filing with EPA of a petition for rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(e), with eventual judicial review in the D.C.Circuit. 42 U.S.C. § 7607(b)(1). In any event, we are convinced that the issues raised by the petition in the instant case are best left to the national rulemaking process rather than to an SIP approval proceeding.

## CONCLUSION

For all of the foregoing reasons, the petition for review is denied.